IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EDUARDO CRUZ-URVINA, | § | |
| | § | No. 667, 2014 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | Court Below:  Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | No.  1306009173 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: September 16, 2015
Decided: October 2, 2015

Before **STRINE**, Chief Justice, **HOLLAND** and **VAUGHN**, Justices.

*ORDER*

On this 2nd day of October 2015, it appears to the Court that:

(1) Defendant-Below/Appellant Eduardo Cruz-Urvina ("Cruz-Urvina") appeals from a Superior Court jury verdict finding him guilty of one count of Aggravated Menacing[1] and one count of Possession of a Firearm During the Commission of a Felony ("PFDCF").[2] Cruz-Urvina raises two claims on appeal. First, he claims that the trial court erred when it denied his motion for judgment of acquittal as to the charge of PFDCF, because the State failed to present sufficient evidence to show that Cruz-Urvina possessed a gun on the night in question. Second, Cruz-Urvina claims

---

[1] 11 *Del. C.* § 602(b).
[2] 11 *Del. C.* § 1447A.

that the State's repeated reference to the victims' eleven-month-old daughter, who was present at the time of the alleged crime, amounted to prosecutorial misconduct. We find no merit to Cruz-Urvina's claims and affirm.

(2) On the night of June 9, 2013, David Munoz ("Munoz"), Esli Resendiz ("Resendiz"), and their daughter returned home from a barbecue. Resendiz went inside their apartment while Munoz removed their eleven-month-old daughter from the car. After taking his daughter out of the car, Munoz saw a man walking towards him. Munoz recognized him as Cruz-Urvina. As he approached Munoz, who was still holding his daughter, Cruz-Urvina pulled a handgun from his blue duffle bag. Cruz-Urvina then began waving the handgun at Munoz and his daughter. At the same time, he shouted: "I finally got you. I'm going to kill you. I'm going to shoot you right here."[3] Cruz-Urvina also made reference to the use of "hollow tips."[4]

(3) Unaware of the altercation, Resendiz went outside to check on Munoz and their daughter. Despite his instruction to go back inside, Resendiz continued towards Munoz, who then told her that there was a man with a gun. Resendiz asked Cruz-Urvina why he was pointing a gun at her daughter. She then warned him "not to do something he [would] regret."[5] Munoz informed Resendiz that Cruz-Urvina had

---

[3] Appellant's Op. Br. App. at 41.
[4] At trial, Officer Mitchell testified that while searching Cruz-Urvina's residence, several hollow-point bullets were found under his bed.
[5] Appellant's Op. Br. App. at 95.

been drinking, which caused Resendiz to stop talking. After five to ten minutes, Munoz convinced Cruz-Urvina to leave.

(4) Worried about their safety, Munoz went into his apartment, packed some items for his daughter, and drove his family to his sister's home in Wilmington, Delaware. From his sister's house, Munoz reported Cruz-Urvina's behavior to the police. Munoz provided the police with Cruz-Urvina's name and a link to his Facebook profile. Munoz also informed the police that Cruz-Urvina was in possession of a black handgun.

(5) After Munoz and Resendiz identified Cruz-Urvina in a photo lineup, the police obtained a search warrant for Cruz-Urvina's residence. Upon their arrival at the residence, Cruz-Urvina's mother directed the police to his room, where they found hollow-point bullets, spent bullet casings, a revolver holster, a revolver speed loader, and a letter addressed to Cruz-Urvina. The police also noted that the room looked similar to the one pictured on Cruz-Urvina's Facebook profile. Cruz-Urvina was subsequently arrested and indicted on three counts of Reckless Endangering First Degree,[6] five counts of PFDCF,[7] and two counts of Aggravated Menacing.[8]

(6) At trial, the State pursued only two counts of PFDCF and two counts of

---

[6] 11 *Del. C.* § 604.
[7] 11 *Del. C.* § 1447A.
[8] 11 *Del. C.* § 602(b).

3

Aggravated Menacing, one alleging Munoz as the victim, and one alleging Resendiz as the victim. As part of its case-in-chief, the State presented evidence of the items found in Cruz-Urvina's room. Through their testimony, Munoz and Resendiz identified Cruz-Urvina as the perpetrator.[9] Further, Munoz testified that Cruz-Urvina had a black revolver. Resendiz testified that she clearly saw that it was a large black gun, about eight or nine inches in length.

(7) During its opening statement, the State, without objection, described the incident, including the fact that the daughter was present at the scene with Munoz. After both Munoz and Resendiz testified that their daughter was present during the altercation, Cruz-Urvina objected. Specifically, he objected to Munoz's testimony, arguing that the State was attempting to make the jury "feel really, really bad because there was a one-year-old daughter involved in this."[10] The prosecutor replied that she was setting the scene of the incident, but was having difficulty developing factual testimony from Munoz. The trial court permitted the State to continue with the line of questioning.

(8) At the close of the State's case, Cruz-Urvina moved for judgment of acquittal as to the two charges of PFDCF. He argued that since no gun was

---

[9] The State also elicited testimony that confirmed Cruz-Urvina was the same person that Munoz and Resendiz identified during the police investigation.

[10] Appellant's Op. Br. App. at 38.

4

recovered, there was no proof that the object in his hand was, in fact, a firearm, and the State did not sufficiently prove that there was any connection between the items found in Cruz-Urvina's room and the night in question. The trial court denied the motion.

(9) During closing arguments, the State again mentioned that Munoz's daughter was "just shy of her first birthday" during the altercation.[11] Defense counsel objected to this on grounds that it was intended to elicit an emotional response from the jury. The State argued the fact was relevant to why Munoz and Resendiz acted the way that they did when threatened by Cruz-Urvina. The trial court cautioned the State, but allowed further reference to the daughter as long as it pertained to why Munoz called the police. While charging the jury, the trial court gave a standard sympathy instruction.

(10) Cruz-Urvina first argues that his motion for judgment of acquittal was improperly denied because the State did not present enough evidence to prove that he possessed a gun on the night in question.

(11) The denial of a motion for judgment of acquittal is reviewed *de novo*.[12] This Court must "determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the

---

[11] Appellant's Op. Br. App. at 223.
[12] *White v. State*, 906 A.2d 82, 85 (Del. 2006).

5

crimes charged beyond a reasonable doubt."[13] In reviewing the evidence, "we do not distinguish between direct and circumstantial evidence."[14]

(12) A person is guilty of PFDCF when he or she possesses a firearm while committing a felony.[15] A firearm is defined as "any weapon from which a shot . . . may be discharged . . . whether operable or inoperable, loaded or unloaded."[16] A firearm need not be recovered to support a jury finding that a defendant possessed a firearm during the commission of a felony.[17] Mere testimony, even when it is conflicting, has been sufficient to allow a jury to find that a defendant possessed a firearm while committing a felony.[18]

(13) In *Poon v. State*, the defendant claimed that there was insufficient evidence to establish that he possessed a firearm during the commission of a robbery.[19] No firearm was recovered.[20] At trial, the only evidence presented was the testimony of two witnesses.[21] Although the witnesses' testimony conflicted on the details of the weapon, this Court held that "it was the jury's prerogative to resolve

---

[13] *Id.*

[14] *Poon v. State*, 880 A.2d 236, 238 (Del. 2005).

[15] 11 *Del. C.* § 1447A(a).

[16] 11 *Del. C.* § 222(12).

[17] *See Poon*, 880 A.2d at 239 (finding conflicting testimony of two eyewitnesses sufficient); *see also Fortt v. State*, 767 A.2d 799, 803 (Del. 2001) (affirming a jury verdict finding the defendant guilty of PFDCF where the only evidence that the defendant had a weapon was eyewitness testimony).

[18] *Poon*, 880 A.2d at 239.

[19] *Id.* at 237-39.

[20] *Id.* at 239.

[21] *Id.* at 238-39.

these conflicts."[22] We held that a rational trier of fact could find beyond a reasonable doubt that a defendant possessed a firearm during the commission of a felony based only on the testimony of two witnesses.[23]

(14) In the case at bar, there was sufficient evidence to permit a rational trier of fact to determine that Cruz-Urvina possessed a gun during the commission of a felony. Similar to the evidence presented in *Poon*, two eyewitnesses testified that Cruz-Urvina possessed a gun during the altercation. Munoz testified that Cruz-Urvina threatened him with a black revolver, and Resendiz testified that Cruz-Urvina wielded a large black gun. The speed loader, revolver holster, and hollow-point bullets found under Cruz-Urvina's bed were also presented as circumstantial evidence. As in *Poon*, the jury could have found that Cruz-Urvina possessed a gun on the night in question based solely on the testimony of Munoz and Resendiz. It was for the jury to determine whether to credit the testimony and conclude that all of the evidence established that Cruz-Urvina was guilty of PFDCF. Accordingly, we find no merit to the Appellant's first claim.

(15) Next, Cruz-Urvina contends that the State committed prosecutorial misconduct when it referenced the victims' daughter during trial.

(16) "If defense counsel raised a timely and pertinent objection to prosecutorial

---

[22] *Poon*, 880 A.2d at 239.
[23] *Id.*

7

misconduct at trial, . . . we [] review for harmless error."[24]  "The first step in the harmless error analysis involves a *de novo* review of the record to determine whether misconduct actually occurred.  If we determine that no misconduct occurred, our analysis ends there."[25]  "If . . . the prosecutor did engage in misconduct, we then examine whether the improper comments or conduct prejudicially affected the defendant's substantial rights necessitating a reversal of his conviction."[26]

(17) When a prosecutor unfairly appeals to the emotions of a jury, he prejudices the defendant's right to a fair trial.[27]  "A guilty verdict must be based upon the evidence and the reasonable inferences therefrom, not on an irrational response which may be triggered if the prosecution unfairly strikes an emotion in the jury."[28]  "Appeals to sympathy and jurors' emotions are impermissible because they go beyond the facts of the case and the reasonable inferences from the facts."[29]

(18) In *Hooks v. State*,[30] this Court held that the prosecutor's comments regarding hypothetical future victims constituted misconduct, as they strayed too far

---

[24] *Wynn v. State*, 93 A.3d 638, 640 (Del. 2014) (quoting *Baker v. State*, 906 A.2d 139,148 (Del. 2006)).

[25] *Id.* (internal quotations omitted).

[26] *Id.* In order to determine the prejudicial effect of any prosecutorial misconduct, this Court must evaluate "[1] the closeness of the case, [2] the centrality of the issue affected by the (alleged) error, and [3] the steps taken to mitigate the effects of the error." *Id.*

[27] *Hooks v. State*, 416 A.2d 189, 205 (Del. 1980).

[28] *DeShields v. State*, 534 A.2d 630, 642 (Del. 1987).

[29] *Id.*

[30] *Hooks*, 416 A.2d at 205-06.

away from the facts of the record in an attempt to appeal to the emotions of the jurors.[31] Conversely, in *DeShields v. State*, this Court held that no misconduct occurred when a prosecutor asked the jury to deliver justice to the victim.[32] This Court held that, since the comment focused on the evidence in the case, it did not "impermissibly draw the jury's attention away from the evidence in [the] case."[33]

(19) Cruz-Urvina's prosecutorial misconduct claim is unavailing. Unlike in *Hooks*, the State's comments were factual in nature. As in *DeShields*, the comments did not draw the jury's attention away from the evidence in the case and were based entirely on the evidence presented. References to the daughter were appropriate to give the jury a complete account of what occurred. We believe that the defendant underestimates the ability of the jury to carefully and conscientiously consider the evidence without being influenced by sympathy. We conclude that no prosecutorial misconduct occurred.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

_____
Justice

---

[31] *Id.* at 205-06. However, this court held that the prosecutor's misconduct did not prejudice the defendant's right to a fair trial. *Id.* at 206-08.

[32] *DeShields*, 534 A.2d at 642.

[33] *Id.* (internal quotations omitted).

9