# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | : | ID. No. 0808022374 |
| | : | In and for Kent County |
| v. | : | |
| | : | |
| | : | RK08-10-0891-01 |
| | : | RK08-10-0892-01 |
| JONATHAN L. STEVENS | : | RK08-10-0894-01 |
| | : | RK08-10-0895-01 |
| Defendant. | : | RK08-10-0896-01 |
| | : | RK08-10-0897-01 |

## ORDER

Submitted: August 9, 2017
Decided: October 6, 2017

On this 6th day of October, 2017, having considered Defendant Jonathan Stevens' (hereinafter "Mr. Stevens'") appeal from the Commissioner's Findings of Fact and Recommendations Report (hereinafter "Commissioner's Report") pertaining to his amended motion for post-conviction relief, the State's answer to Mr. Stevens' motion, the trial and supplemental record, and the Commissioner's Report, it appears that:

(1)     On May 21, 2009, a jury convicted Mr. Stevens of Robbery in the First Degree and Possession of a Firearm During the Commission of a Felony as well as multiple other offenses.[1]  On July 14, 2009, the Court found Mr. Stevens to be a habitual offender and sentenced him, *inter alia,* to 58 years in prison.  The Delaware Supreme Court affirmed this conviction on July 22, 2010.[2]  Mr. Stevens then filed a timely motion for post-conviction relief on September 7, 2010.  The

---

[1] For a detailed description of the crime see the Delaware Supreme Court's decision on direct appeal in *Stevens v. State*, 3 A.3d 1070 (Del. 2010).

[2] *Id.*

Superior Court, adopting the Commissioner's Report, denied his motion on January 30, 2013. Mr. Stevens appealed this decision to the Delaware Supreme Court on June 28, 2013.

(2) The Supreme Court, on September 10, 2013, reversed and remanded the Superior Court's decision instructing the Court to appoint counsel for Mr. Stevens' motion. The Court appointed counsel on April 14, 2014, and his counsel filed an amended motion for post-conviction relief on May 15, 2015. The Commissioner reviewed Mr. Stevens' amended motion and recommended denying his request. Mr. Stevens then filed an appeal from the Commissioner's Report. In this Order, the Court addresses the amended motion and also the written objections raised by the Defendant to the Commissioner's Report. The Court largely adopts the reasoning in the Commissioner's Report and provides further explanation necessary to address the Defendant's objections to that Report.

(3) In Mr. Stevens' amended motion, he argues that his trial counsel was ineffective for failing to object, review, or request a curative instruction in relation to the admission of Co-Defendant Jeffery Boyd's (hereinafter "Mr. Boyd's") statement offered pursuant to 11 *Del. C.* §3507 (hereinafter "3507 Statement"). Second, he argues that the State's failure to redact the 3507 Statement amounts to prosecutorial misconduct in violation of Mr. Stevens' due process rights. In his third argument for relief, he maintains that the State committed a *Brady* violation by failing to disclose its witness, Tamara Stratton's (hereinafter "Ms. Stratton's") criminal conviction. In his fourth argument, he maintains that he was denied a fair trial due to cumulative due process errors committed during trial. Finally, Mr. Stevens requests an evidentiary hearing to fully develop the factual record regarding the claims raised in his motion. For the reasons set forth below, the Court finds that Mr. Stevens is not entitled to an evidentiary hearing and is not entitled to a new trial.

(4) Before addressing the merits of Mr. Stevens' claims, the Court must first address whether his motion is procedurally barred, applying the version of the Rule in effect at the time of filing his *pro se* motion.[3] Rule 61 requires claims for relief to be filed within one year of the conviction becoming final.[4] Here, Mr. Stevens' conviction became final on July 22, 2010 when the Delaware Supreme Court affirmed it. Mr. Stevens filed his *pro se* motion on September 7, 2010. Accordingly, he timely filed his motion.

(5) However, the third procedural bar in Rule 61 states that grounds for relief not asserted in the proceedings leading to a judgment of conviction are thereafter barred unless the movant demonstrates: (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights.[5] Mr. Stevens claims for relief are all based on arguments that were not asserted at trial, and therefore, this procedural bar applies unless he can show a cause for relief and prejudice. Furthermore, Rule 61(i)(5) dictates that the procedural bars are inapplicable "to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[6]

(6) Here, Mr. Stevens' four claims are premised, to some extent, on allegations of ineffective assistance of counsel.[7] Ineffective assistance of counsel is sufficient cause for not having asserted these grounds for relief at trial and on direct appeal. Accordingly, these claims are not subject to the procedural default rule in part because the Delaware Supreme Court will not generally hear these

---

[3] *Redden v. State*, 150 A.3d 768, 772 (Del. 2016).

[4] Super. Ct. Crim. R. 61(i)(1).

[5] *Id.* at 61(i)(3).

[6] Rule 61(i)(5).

[7] One of the four claims involves allegations of prosecutorial misconduct regarding the same evidentiary error as is the subject of an ineffective assistance of counsel claim.

3

claims on direct appeal. Additionally, a successful ineffective assistance of counsel argument "that demonstrates a constitutional violation may be considered an exception under Rule 61(i)(5)."[8] However, Mr. Stevens must still meet the standard set forth in *Strickland v. Washington*,[9] and adopted by the Delaware Supreme Court in *Albury v. State*,[10] in order to succeed in his ineffective assistance of counsel claims.

(7)  In order to prevail on an ineffective assistance of counsel claim, *Strickland* requires the defendant to first

> show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.[11]

(8)  Mr. Stevens' first claim in his amended motion is that his trial counsel provided ineffective assistance of counsel by failing to object to the admission of Mr. Boyd's 3507 Statement. He argues that the State did not provide an adequate foundation of admissibility because Mr. Boyd did not testify regarding the truthfulness of his out-of-court statement. According to Mr. Stevens, without the proper foundation, the trial court should not have admitted the statement. Therefore, by failing to object to its admission, trial counsel provided ineffective assistance.

---

[8] *State v. Flowers*, 150 A.3d 276, 282 (Del. 2016).

[9] 466 U.S. 668, 687 (1984).

[10] 551 A.2d 53, 58 (1988).

[11] *Strickland*, 466 U.S. at 687.

4

(9)    The Delaware Supreme Court set forth the foundation that a party must lay prior to the admission of a 3507 Statement. In *Keys v. State*, the Court held that "[i]n order to offer the out-of-court statement of a witness, the statute requires the direct examination of the declarant by the party offering the statement, as to both the events perceived or heard and the out-of-court statement itself."[12] The Court has interpreted this to require a two-part foundation: the witness must testif[y] about both the events and whether or not they are true."[13]

(10)    At trial, the State's foundation for Mr. Boyd's statement included asking him whether he answered the detective's questions relating to a robbery at the China King in Dover. Additionally, Mr. Boyd testified that he pled guilty to the robbery and two other related charges[14] and he stated that he discussed the China King robbery with the detective.[15] The State also asked Mr. Boyd whether he answered the detective's questions to the best of his ability at that time, to which Mr. Boyd responded "at that time."[16] The State went on to ask Mr. Boyd whether he responded to the detective's questions "[f]reely? I mean nobody was forcing you; you weren't threatened; nobody beat you into answering the questions? You were in the room with your mother and detective?" Mr. Boyd responded "[y]eah, that's right."[17]

(11)    The Court finds that this testimony satisfied the foundation required for admissibility of the 3507 Statement. Mr. Boyd first testified about the events. While testifying, he discussed his involvement in the crime through discussing his plea agreement.    He also testified that he discussed the crime with the

---

[12] 337 A.2d 18, 20 n.1 (Del. 1975).

[13] *E.g., Ray v. State*, 587 A.2d 439, 443 (Del. 1991).

[14] *Id.* at B-5–B-8.

[15] *Id.* at B-8–B-11.

[16] Trial Transcript at B-10.

[17] *Id.*

5

investigating detective. This is sufficient to meet the first part of the foundational requirement that the witness testify about the events.

(12) Additionally, the State laid a proper foundation with regard to the truthfulness of this statement.[18] Mr. Boyd testified that he answered the detective's questions regarding the robbery to the best of his ability at the time. Implicit in this statement is that Mr. Boyd answered the questions truthfully. Accordingly, the State satisfied the second part of the foundational requirement. As the State met both foundational aspects for admission of a 3507 Statement, Mr. Boyd's out-of-court statement was admissible, and Mr. Stevens' trial counsel did not provide ineffective assistance of counsel by failing to object to this foundation. His trial counsel was not deficient in this regard, and Mr. Stevens' first argument for relief is without merit.

(13) Mr. Stevens next argues that his trial counsel was ineffective for failing to review Mr. Boyd's 3507 Statement prior to the State playing it at trial. When the State played the recorded 3507 Statement to the jury, a portion of the tape included statements by the detective that were clearly irrelevant and should have been redacted. However, because Mr. Stevens' trial counsel did not review the tape prior to trial, these statements were played before the jury. Mr. Stevens

---

[18] While the Court finds that the State laid a proper foundation as to the truthfulness of the prior statement, it is not clear whether the State was required to do so. In *State v. Flowers*, the Delaware Supreme Court distinguished "between the right of a defendant's attorney to insist that the State established both foundational requirements prior to the admission of a Section 3507 statement into evidence and *the right of a defendant's attorney to make a professional judgment* not to object if the second foundation requirement is not established by the State." 150 A.3d 276, 280 (Del. 2016)(emphasis added). The Delaware Supreme Court determined that when an attorney does not object to the truthfulness foundation based on his or her professional judgment, such a foundation is not required. *Id.* at 281. Here, trial counsel did not object to the foundation and therefore it is possible that the failure to object rendered this foundational requirement unnecessary. Additionally, the Delaware Supreme Court has explained that "there is no requirement that the witness either affirm the truthfulness of the out-of-court statement, or offer consistent trial testimony." *Moore v. State*, 655 A.2d 308, 1995 WL 67104, at *2 (Del. Feb. 17, 1995) (Table).

argues that the portion of the tape that the State should have redacted was highly prejudicial and therefore his failure to review the tape fell below the objective standard of reasonableness and amounted to ineffective assistance of counsel.

(14) The portion of the tape at issue includes the detective stating that he thinks "you guys have done some other ones. I think he's brought you along for some other ones."[19] When Mr. Boyd responded with "[w]hat do you mean other ones," the detective clarified by saying "[s]ome other robberies in particular."[20] Mr. Boyd did not provide an answer and the detective followed up saying "I'm actually pretty sure you guys have done some more stuff."[21] Mr. Boyd denied this allegation saying "[o]h nah. Be honest with you I haven't."[22] The detective then asked Mr. Boyd "[w]hat else has he done" to which Mr. Boyd responded "[o]nly thing I know about is when he had the truck."[23] At this point, Mr. Stevens' trial counsel objected. During a side bar discussion, the parties agreed that this exchange was irrelevant and should not have been included. However, once the State represented that there was no further irrelevant testimony, trial counsel withdrew his objection. The judge asked whether counsel wanted a curative instruction. Mr. Stevens' trial counsel declined the offer.

(15) The Delaware Supreme Court has made it clear that only "the voluntary out-of-court statement of a witness who is present and subject to cross-examination" is admissible at trial.[24] The Delaware Supreme Court determined that "interrogations that contain both the witness' statements and inadmissible

---

[19] Mr. Stevens' amended motion for post-conviction relief at 13.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Stevens v. State*, 3 A.3d 1070, 1072 (Del. 2010).

7

statements by third parties must be redacted."[25] Such redactions must occur prior to trial.[26] During Mr. Stevens' direct appeal, the Supreme Court determined that the portion of the interview regarding the detective's beliefs that the two were involved in prior robberies was not admissible and should have been redacted.[27]

(16) Here, it is clear that (1) the State should have redacted this portion of the interrogation and that (2) Mr. Stevens' trial counsel should have ensured that such redactions were done prior to trial to avoid the jury hearing inadmissible portions of the statement. Mr. Stevens' trial counsel admitted that he did not review the 3507 Statement prior to the State playing it at trial. Given the Delaware Supreme Court's clear guidance on this issue prior to Mr. Stevens' initial trial, his counsel's failure to review the statement prior to its admission was deficient. However, this deficient performance did not prejudice Mr. Stevens sufficiently to warrant a new trial.

(17) In order to satisfy the second prong of *Strickland*, Mr. Stevens must show that the errors were so serious as to deprive the defendant of a fair trial.[28] In this regard, Mr. Stevens must show that the error had an effect on the judgment.[29] Accordingly, the Court must determine "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."[30]

(18) While the statement implied that Mr. Stevens committed prior robberies and was therefore prejudicial in that it could cause the jury to infer that he has the propensity to commit robberies, this inadmissible statement does not

---

[25] *Id.* at 1073.

[26] *Miles v. State*, 985 A.2d 390, 2009 WL 4114385, at *3 (Del. Nov. 29, 2009) (Table).

[27] *Stevens*, 3 A.3d at 1077.

[28] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[29] *Id.* at 691.

[30] *Id.* at 695.

meet the standard of prejudice required by *Strickland*. Without this inadmissible portion of the 3507 Statement, there was significant evidence for the jury to find Mr. Stevens guilty beyond a reasonable doubt. As discussed above, Mr. Boyd's 3507 Statement was admissible as the State laid a proper foundation (though the detective's statements and questions regarding prior robberies should have been redacted). The section of the statement where Mr. Boyd implicated Mr. Stevens in the robbery was admissible, however. Accordingly, this was evidence for the jury to consider.

(19) Additionally, the State had the victim testify at trial, and the victim identified Mr. Stevens as the person who committed the robbery and the assault. While Mr. Stevens' trial counsel, on cross examination, established that the victim was unable to identify Mr. Stevens in a photo array two weeks after the robbery occurred, the jury was still able to consider the victim's testimony that Mr. Stevens was the person who robbed and assaulted him. Finally, Tamara Stratton, who lent Mr. Stevens and his co-Defendant her truck, testified that the same night of the robbery, she saw Mr. Stevens burning the cash register drawer taken from the victims. The burnt drawer was recovered from the area she described to the police. With these State witnesses convincingly implicating Mr. Stevens in the robbery and assault, the absence of the offending portion of Mr. Boyd's 3507 Statement would not make it reasonably probable that the trier of fact would have had reasonable doubt as to Mr. Stevens' guilt. Accordingly, he is unable to satisfy the second prong of *Strickland*, and his claim for ineffective assistance of counsel for failing to review Mr. Boyd's 3507 Statement prior to trial is without merit.

(20) Next, Mr. Stevens argues that his trial counsel provided ineffective assistance of counsel because he did not request a curative jury instruction upon hearing the inadmissible section of Mr. Boyd's 3507 Statement. Mr. Stevens argues that because all parties determined that this statement was inadmissible and prejudicial during the side bar conference, his failure to accept the curative

9

jury instruction was unreasonable. Mr. Stevens further argues that the decision to not seek an instruction to avoid drawing more attention to the statement should not be given deference because it allowed the jury to consider an improper statement that was highly prejudicial. Additionally, Mr. Stevens argues that by withdrawing his objection, Mr. Stevens was not able to raise this issue on appeal thus depriving him of a fair appellate ruling on the issue.

(21) Under the first prong of *Strickland*, it is not clear that his trial counsel's decision was deficient. In order to satisfy this prong of *Strickland*, Mr. Stevens must show that his counsel's performance was not reasonable "considering all of the circumstances."[31] In making this decision, a court reviewing "counsel's performance must be highly deferential."[32] There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" meaning that there is a strong presumption that a lawyer's conduct is a part of a "sound trial strategy."[33]

(22) As noted above, this section of the interrogation was inadmissible and prejudicial in that it was impermissible character evidence. However, as soon as the State played the inadmissible section of Mr. Boyd's 3507 Statement, Mr. Stevens' trial counsel objected. In his affidavit, trial counsel stated that he objected to "stop the playing of the tape." He further noted that at first he agreed with the trial judge's offer of an instruction. However, "upon further reflection, [he] concluded that [he] would rather not have an instruction given because [he] did not want to call any more attention to the comment than had already been made, and especially in light of Co-Defendant Boyd's response."

---

[31] *Id.* at 688.

[32] *Id.* at 689.

[33] *Id.*

10

(23)    Given the strong presumption that a lawyer's conduct falls within sound trial strategy, the Court finds that his decision to decline a curative instruction was not unreasonable. The record reflects that trial counsel considered the jury instruction and the circumstances of the statement in the context of the overall case. Not wanting to draw attention to the statement of a police officer implying that Mr. Stevens had committed other robberies was a judgment call by an experienced attorney. The record reflects that this was part of a sound trial strategy and therefore was not unreasonable performance. Accordingly, Mr. Stevens' ineffective assistance of counsel claim on that basis is also without merit.

(24)    Even if the failure to accept a curative instruction amounted to deficient performance, Mr. Stevens' claim would still fail because of insufficient prejudice in the context of the overall evidence. As discussed above, the absence of this statement would not have created reasonable doubt with the jury regarding Mr. Stevens' guilt. Accordingly, he would not be able to meet the second prong of *Strickland*, and his claim would still fail.

(25)    In Mr. Stevens' second claim, he argues that the State's failure to redact Mr. Boyd's 3507 Statement amounted to prosecutorial misconduct and violated his Fourteenth Amendment right to due process. Mr. Stevens' claim again focuses on the section of Mr. Boyd's statement that discussed prior robberies. He claims that the failure to redact this portion of Mr. Boyd's statement amounted to a violation of his Federal and State constitutional right to a fair trial.

(26)    Mr. Stevens did not present this claim to the court during trial or on direct appeal. Accordingly, it is procedurally barred unless he can show cause for failing to present this argument previously and prejudice.[34] Additionally, this procedural bar will not apply if Mr. Stevens presents a "colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined

---

[34] Super. Ct. Crim. R. 61(i)(3).

11

the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the judgment of conviction."[35]

(27) Here, Mr. Stevens correctly argues that the claim was not raised at trial or on direct appeal because of a deficient action of trial counsel. However, as noted above Mr. Stevens is unable to establish prejudice for the ineffective assistance of counsel claim relating to the redaction of the 3507 Statement. Accordingly, he can only proceed on this claim if he can satisfy Rule 61(i)(5). Notably, this is a colorable claim because on direct appeal the Delaware Supreme Court established that the State should have redacted this section of the statement. The State's failure to do so could have impinged on Mr. Stevens' federal and state constitutional right to a fair trial. As a consequence, the claim is not procedurally barred.

(28) As the claim is not procedurally barred, Mr. Stevens must show that he is entitled to relief based on this prosecutorial misconduct. As noted above, the State clearly should have redacted this portion of the 3507 Statement. Mandatory case authority required this, and that authority predated Mr. Stevens' trial. Accordingly, it was misconduct for the State to not have redacted this section of the statement. However, under the circumstances of this case, the Court declines to overturn Mr. Stevens' conviction.

(29) The Delaware Supreme Court has addressed prosecutorial misconduct and established a test for determining when such actions require a Court to overturn a conviction on the basis of that misconduct.[36] In reviewing a claim of prosecutorial misconduct, the Court must consider whether the

---

[35] *Id.* at 61(i)(5).

[36] *See Hughes v. State*, 437 A.2d 559, 571 (Del. 1981). While the Court in *Hughes* confronted prosecutorial comments that amounted to prosecutorial misconduct, the Court does not see any reason why the same test should not apply in this context.

12

misconduct "prejudicially affected substantial rights of the accused."[37] The Court is to consider: (1) "the closeness of the case;" (2) "the centrality of the issue affected by the (alleged) error;" and (3) "the steps taken to mitigate the effects of the error."[38]

(30)   Here, as already discussed above, the Court does not think that this was a close case.  While it is true that there was no physical evidence other than the recovered cash register drawer linking Mr. Stevens to the crime, his co-defendant admitted to his part in the crime and implicated Mr. Stevens as also being involved.  The victim also identified Mr. Stevens in court as the perpetrator of the robbery and assault.  A separate  witness testified that (1) she saw Mr. Stevens burning the cash register drawer on the night of the robbery, and (2) that Mr. Stevens and Mr. Boyd, who admitted his participation in the crimes, together borrowed her truck on the night of the robbery. Also, while the jury learned that the victim was unable to identify Mr. Stevens in a photo array two weeks after the robbery occurred, he unequivocally identified him at trial and explained why he was unable to identify him in the photo array.  Accordingly, the jury was able to rely on three witnesses who convincingly implicated Mr. Stevens in the crime. There was significant direct and circumstantial evidence of his guilt.  For these reasons, the Court does not find that this was a close case.

(31)   With regard to the factor requiring evaluation of the misconduct's effect on the issues central to the case, there is certainly risk of that given the fact that the detective's inadmissible statements included impermissible character evidence.  On the other hand, the 3507 declarant's denial of the interrogating detective's suggestions regarding other potential robberies somewhat lessens such evidence from being considered central to the case.

---

[37] *Id.*

[38] *Id.*

(32) With regard to the final factor to consider, the Court notes that little was done to mitigate the effect of this error. While trial counsel objected immediately to stop the tape from being played, the Court, at counsel's request, did not instruct the jury regarding this statement. Nevertheless, despite the fact that little was done to mitigate this error, on balance, this prosecutorial misconduct did not prejudice Mr. Stevens' right to a fair trial. This was not a close case and when weighing the three required factors in their totality, the Court finds that Mr. Stevens does not establish that this prosecutorial misconduct requires post-conviction relief.

(33) Mr. Stevens' third claim for post-conviction relief asserts that the State committed a *Brady* violation by failing to disclose Tamara Stratton's criminal conviction for shoplifting in 2000. Mr. Stevens argues that this amounted to a violation of his due process rights under both the Federal and State constitutions.

(34) The Court must first determine whether the State committed a *Brady* violation and then, if there was a violation, whether such an error requires post-conviction relief. To determine whether there is a *Brady* violation, the Court performs a three prong analysis.[39] The Court must determine whether: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[40]

(35) Here, the information regarding Ms. Stratton's criminal conviction for shoplifting in 2000 would be evidence that is favorable to Mr. Stevens for purposes of impeachment. A criminal conviction for shoplifting that is nine years old at the time of trial was admissible because this misdemeanor charge involves

---

[39] *Starling v. State*, 882 A.2d 747, 756 (Del. 2005).
[40] *Id.*

14

dishonesty. Accordingly, this information could have been used to impeach her. Furthermore, there is no evidence of record that would indicate that the State disclosed this information to Mr. Stevens. Accordingly, it is likely that this evidence was suppressed by the State.[41]

(36) Mr. Stevens must show that he suffered prejudice from the State's failure to disclose this evidence. Mr. Stevens argues that this evidence would have impacted the credibility of Ms. Stratton's testimony and made the jury less likely to believe her. He also contends that she was a key witness of the State. Therefore, without this evidence, he suffered prejudice. Namely, using this evidence to attack her credibility would have made it more likely that the jury would not find her less credible. As the Court finds that there is arguably a *Brady* violation, post-conviction relief is not procedurally barred by Rule 61.[42] Accordingly, the Court will consider its merits.

(37) Assuming that this did amount to a *Brady* violation, it does not amount to grounds for post-conviction relief. In order for a *Brady* violation to warrant post-conviction relief, the evidence suppressed must undermine the confidence in the verdict.[43] The Court finds here that the failure to disclose Ms. Stratton's prior shoplifting conviction does not undermine the Court's confidence in the verdict. As already discussed, this was not a close case. Accordingly, impeaching Ms. Stratton with a prior shoplifting conviction from nine years earlier would not have impacted this verdict. Accordingly, Mr. Stevens is not entitled to post-conviction relief on this claim.

---

[41] Consistent with the Court's finding that an evidentiary hearing is not necessary, as with the other asserted errors, the Court assumes that the *Brady* material was not given to the Defense. Accordingly, no further evidence is necessary.

[42] *E.g., Jackson v. State*, 770 A.2d 506, 514 (Del. 2001).

[43] *Id.* at 514–15.

(38) Mr. Stevens' final argument is that cumulative due process errors require post-conviction relief. Mr. Stevens points the Court to case law where the impact of one error standing alone might not be a basis for reversal but the cumulative impact of all the errors warranted relief.[44] He maintains that the several errors committed at his trial cumulatively amounted to a constitutional violation.

(39) This claim was not raised during trial, on direct appeal, or in Mr. Stevens' original motion. Accordingly, it is procedurally barred unless he can show cause and prejudice or that it is a "colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to the judgment of conviction."[45] Mr. Stevens argues that this claim is not barred because it includes claims of ineffective assistance of counsel which are not normally raised on direct appeal and it asserts a violation of due process under the United States Constitution. The Court finds that this argument is procedurally barred because he cannot show prejudice or that this amounts to a colorable claim regarding a constitutional violation.

(40) The Court, in reviewing all of Mr. Stevens claims, has determined that none are sufficient to warrant post-conviction relief. While the Court acknowledges that errors were made during the course of Mr. Stevens' trial, including the failure to redact the inadmissible portion of Mr. Boyd's 3507 Statement, defense counsel's failure to ensure the redaction occurred, and a *Brady* violation, none of those errors caused any reasonable likelihood of a changed trial outcome. Furthermore, the Court finds that the outcome of this trial would not change in light of the cumulative impact of these errors. Accordingly, the Court

---

[44] *Wright v. State*, 405 A.2d 685, 690 (Del. 1979).

[45] Rule 61(i)(3) and (5).

16

finds that the verdict is worthy of confidence despite the cumulative impact of these errors. Therefore, Mr. Stevens' final argument is procedurally barred because he is unable to show prejudice and because it does not amount to a colorable claim of a constitutional violation.

(41) The Court finds that Mr. Stevens' several arguments for post-conviction relief are all either procedurally barred or without merit. On the record before the Court, the Court is comfortable making this decision in the absence of a further evidentiary hearing. The Commissioner's recommendation for the lack of a need for an evidentiary hearing is accordingly accepted.

**THEREFORE,** after reviewing the record and considering the Commissioner's Report and Recommendation, which is adopted in part, excepting only the different findings and analysis as outlined herein, it is clear that Mr. Stevens is not entitled to post-conviction relief, and his motion is therefore **DENIED**.

**IT IS SO ORDERED.**

_____
Judge

JJC:jb

oc: Prothonotary
sc: Commissioner Andrea Freud
    John Williams, Esq.
    Trial Counsel of Record
    Christopher S. Koyste, Esq.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| STATE OF DELAWARE | ) | ID. No. 0808022374 |
|---|---|---|
| | ) | In and for Kent County |
| v. | ) | |
| | ) | RK08-10-0891-01 PFDCF (F) |
| | ) | RK08-10-0892-01 Robbery 1st (F) |
| JONATHAN L. STEVENS | ) | RK08-10-0894-01 PDWBPP (F) |
| Defendant. | ) | RK08-10-0895-01 Disguise (F) |
| | ) | RK08-10-0896-01 Conspiracy 2nd (F) |
| | ) | RK08-10-0897-01 Criminal Mischief |
| | ) | < 1,000 (M) |

## COMMISSIONER'S REPORT AND RECOMMENDATION

**Upon Defendant's Motion for Postconviction Relief
Pursuant to Superior Court Criminal Rule 61**

John Williams, Esquire, Deputy Attorney General, Department of Justice, for the State of Delaware.

Christopher S. Koyste, Esquire for defendant.

FREUD, Commissioner
June 12, 2017

The defendant, Jonathan L. Stevens ("Stevens"), was found guilty, following a jury trial on May 21, 2009 of one count of Possession of a Firearm During the Commission of a Felony, 11 *Del. C.* § 1447A; one count of Robbery in the First

Degree, 11 *Del. C.* § 832; one count of Possession of a Deadly Weapon (Firearm) by a Person Prohibited, 11 *Del. C.* § 1448; one count of Wearing a Disguise During the Commission of a Felony, 11 *Del. C.* § 1239; Conspiracy in the Second Degree, 11 *Del. C.* § 512 and Criminal Mischief < $1,000, 11 *Del. C.* § 811. The State entered a *nolle prosequi* on one count of Possession of a Deadly Weapon During the Commission of a Felony. A presentence office investigation was ordered by the Court. On June 19, 2009, the State moved to have Stevens declared a habitual offender. Prior to sentencing the Court granted the State's motion and declared Stevens a habitual offender pursuant to 11 *Del. C.* § 4214(a). On July 14, 2009, Stevens was sentenced to a total of sixty-five years, thirty days incarceration, suspended after fifty-eight years for probation, thirty-five of which were minimum mandatory time.

Stevens, through counsel, appealed his conviction to the Delaware Supreme Court. The issues raised on appeal were that:

> 'the State was erroneously permitted to present to the jury Detective Robert Roswell's ... irrelevant and unduly prejudicial opinion that Stevens was involved in other robberies; opinion as to the credibility of the State's key witnesses; characterization of the evidence; and misstatement of the evidence.' The detective's statements were contained within a DVD of his interrogation of the juvenile co-defendant, Jeffrey Boyd ("Boyd"). the

redacted DVD was introduced into evidence by the State, as prior statements of Boyd, under title 11, section 3507 of the Delaware Code.

The Supreme Court, on July 22, 2010, affirmed Stevens' conviction and sentence.[1]

Next Stevens filed a *pro se* motion for postconviction relief pursuant to Superior Court Criminal Rule 61 in which he alleged three grounds for relief as follows:

Ground one:    Defendant was denied his constitutional right to effective assistance of counsel when his trial counsel ignorance of the governing law caused counsel to fail to render inadmissible prejudicial comments by a third party relied upon to support the Defendant's conviction.

Ground two:    Defendant was denied his constitutional right to effective assistance of counsel when defense counsel's ignorance of the law led him to decline to present a defense.

Ground three:    Ineffective assistance of counsel: cross-examination.
Defendant's counsel was ineffective in failing to conduct a reasonable pre-trial investigation, in violation of

---

[1] *Stevens v. State*, 3 A.3d 1070 (Del. 2010).

3

> Defendant's rights under the 6th and 14th Amendments. Specifically, trial counsel failed to properly cross-examine State's witness, amounted to ineffective assistance of counsel.

The matter was referred to the Court Commissioner for a Report and Recommendation. I found that Stevens had failed to avoid the procedural bars of Superior Court Criminal Rule 61(i) and that his counsel had represented him effectively. I recommended that the motion be denied as procedurally barred by Rule 61(i)(3) and (4) for failure to prove cause and prejudice and as previously adjudicated. The Court accepted my findings and recommendations and denied Stevens *pro se* motion. Stevens appealed the denial to the State Supreme Court who remanded the motion due to the fact that during the pendency of Stevens appeal this Court amended Rule 61 to provide for the appointment of counsel in a first postconviction motion.[2] The Supreme Court declined to address the merits of the motion. On remand counsel was appointed to represent Stevens and subsequently filed an amended motion for postconviction relief.

## FACTS

Following are the facts as set forth by the Delaware Supreme Court on the initial appeal of Stevens' conviction:

> On the evening of August 1, 2008, Tamara Stratton ("Stratton"), Stevens, and seventeen-

---

[2] *Stevens v. State*, Del. Supr. 196, 2013, Sept. 10, 2013 at 2.

4

year old Boyd left the residence of Stratton's aunt, and rode together to where Stratton lived. During this trip, Stevens asked to borrow Stratton's pickup in order to go to a hotel to see someone. Stratton was dropped off at her home in Dover a little before 10 p.m. that evening. Stevens and Boyd left in her truck.

Later that evening, Xiu Zhang ("Zhang") was working as a cook at the China King restaurant in Dover when two black men wearing disguises on their faces rushed in through the restaurant's back door. According to Zhang, the shorter of the two intruders was armed with a knife, while the other man appeared to have a gun. As Zhang attempted to flee out the front door, he was chased by the person with the knife. The pursuer hit Zhang with his fists and a chair. While Zhang was being assaulted, he saw the other intruder take the store's cash register drawer.

After attacking Zhang and seizing the register drawer with $700 in cash, the two robbers ran out the back door and fled southward. Chairs, a door and the store computer for the China King were all damaged during the robbery. Zhang was treated for his injuries at Kent General Hospital. Photographs of the injuries were introduced as evidence at Stevens' trial.

After Stratton read a newspaper article about the robbery at the China King restaurant, she telephoned the Dover Police Department on August 14, 2008. She told the police that on August 1, 2008, at around 10:00 p.m., she lent her pick-up truck to Stevens, a friend of hers. They were at her aunt's house when Stevens told her that he needed to go to a hotel to see someone. Stevens and his friend "Jeffrey" then drove Stratton home and departed in her truck.

Stratton also told police that later that same night she received a call from Stevens, who told her that her truck had ran out of gas and that he needed her to 'come pick them up.' She went to Governor's Avenue, where the truck was parked. When Stratton arrived at the Governor's Avenue location, she saw Stevens and Boyd behind an apartment building.

At Stevens' trial, Stratton testified that 'They were setting fire to papers and what appeared to me to be a cash register.' When asked at trial if Stevens said anything to her, she replied: 'At the time I really didn't get any response besides everything is okay, everything is okay, basically proceed; go get your truck; you don't know anything.' On cross-examination at trial, Stratton clarified her testimony about what Stevens and Boyd were burning, by explaining that the two men

were not attempting to burn an entire cash register, but the 'drawer to a cash register.' Stratton testified that she called the police because she was afraid her truck would be linked to the robbery.

After speaking with Stratton, the police put together a line up which included Stevens' photograph. The line up was shown to Zhang, who was not able to identify the assailant. In separate photo lineups, however, Stratton identified Stevens and Boyd as the persons who borrowed her truck and whom she saw burning a cash register.

Dover Police Detective Roswell obtained warrants for the arrest of Stevens and Boyd, and on August 22, 2008, he took the juvenile suspect, Boyd, into custody. Boyd and his mother were transported to the Dover Police station where Boyd was interviewed by Detective Roswell in the presence of his mother. Boyd waived his *Miranda* rights and the interview was recorded on a DVD.

During his recorded police interview on August 22, 2008, Boyd told Detective Roswell where he and Stevens had left the cash register drawer. Detective Roswell went to 34 South Governor's Avenue and located the black cash register drawer near the garage where Boyd said it was located. Although Boyd was arrested for the China King robbery

on August 22, 2008, the Dover Police were not able to locate Stevens until October 2, 2008.

Stevens did not give a statement to police. Nor did he testify at trial. The record reflects that the defense rested at Stevens' trial without presenting any evidence.[3]

## STEVENS' CONTENTIONS

Stevens' Appointed Counsel filed an Amended Motion for Postconviction Relief pursuant to Superior Court Rule 61. In the motion there are five grounds for relief:

Ground one: Trial counsel was ineffective for failing to object, review, or request a curative instruction in relation to the admission of Jeffrey Boyd's 3507 statement in violation of Mr. Stevens' Sixth and Fourteenth Amendment Rights under Article I, §§ 4 and 7 of the Delaware Constitution.

Ground two: The State's failure to redact Jeffrey Boyd's 3507 statement amounts to prosecutorial misconduct in violation of Mr. Stevens' Fourteenth Amendment rights under the United States Constitution and his rights under

---

[3] *Stevens*, 3 A.3d at 1071-72.

8

Article I, §§ 4 and 7 of the Delaware Constitution.

Ground three:     The State committed a *Brady* violation by failing to disclose Tamara Stratton's criminal conviction in violation of Mr. Stevens' Fourteenth Amendment rights under the United States Constitution and his rights under Article I, §§ 4 and 7 of the Delaware Constitution.

Ground four:      Jonathan Stevens' constitutional right to a fair trial was denied due to cumulative due process error in violation of Mr. Stevens' Fourteenth Amendment rights under the United States Constitution and his rights under Article I, §§ 4 and 7 of the Delaware Constitution.

Ground five:      An Evidentiary hearing is required to fully develop the factual record in review of the claims raised in this motion.[4]

## DISCUSSION

Under Delaware law, the Court must first determine whether Stevens has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may

---

[4] As detailed in this report, I find Stevens' grounds for relief meritless and consequently there is no need for an evidentiary hearing.

9

consider the merits of the postconviction relief claims.[5] Under Rule 61, postconviction claims for relief must be brought within one year of the conviction becoming final.[6] Stevens's motion was filed in a timely fashion, thus the bar of Rule 61(i)(1) does not apply to the motion. As this is Stevens's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

Grounds for relief not asserted in the proceedings leading to judgment of conviction are thereafter barred unless the movant demonstrates: (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights.[7] The bars to relief are inapplicable to a jurisdictional challenge or "to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[8]

To some extent, each of Stevens' four claims are premised on allegations of ineffective assistance of counsel. Stevens has therefore alleged sufficient cause for not having asserted these grounds for relief at trial and on direct appeal. Stevens's ineffective assistance of counsel claims are not subject to the procedural default rule,

---

[5] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991).

[6] Super. Ct. Crim. R. 61(i)(1).

[7] Super. Ct. Crim. R. 61(i)(3).

[8] Super. Ct. Crim. R. 61(i)(5).

10

in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Stevens, allege ineffective assistance of counsel in order to overcome the procedural default. "However, this path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are distinct, albeit similar, standards."[9] The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance;' [i]neffective assistance of counsel then is cause for a procedural default.[10]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark. Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two part analysis enunciated in *Strickland v. Washington*[11] and adopted by the Delaware Supreme Court in *Albury v. State*.[12]

---

[9] *State v. Gattis*, 1995 WL 790961 (Del. Super.).

[10] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[11] 466 U.S. 668 (1984).

[12] 551 A.2d 53, 58 (Del. 1988).

11

The *Strickland* test requires the movant show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[13] Second, under *Strickland* the movant must show there is a reasonable degree of probability that but for counsel's unprofessional error the outcome of the proceedings would have been different, that is, actual prejudice.[14] In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[15]

Generally, a claim for ineffective assistance of counsel fails unless both prongs of the test have been established.[16] However, the showing of prejudice is so central to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[17] In other words, if the Court finds that there is no possibility of prejudice even if a defendant's allegations regarding counsel's representation were true, the Court may dispose of the claim on this basis

---

[13] *Strickland*, 466 U.S. at 687; *see Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

[14] *Id.*

[15] *See e.g., Outten v. State*, 720 A.2d 547, 557 (Del. 1998) (citing *Boughner v. State*, 1995 WL 466465, at *1 (Del. Supr.)).

[16] *Strickland*, 466 U.S. at 687.

[17] *Id.* at 697.

alone.[18] Furthermore, Stevens must rebut a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and this Court must eliminate from its consideration the "distorting effects of hindsight when viewing that representation."[19] Stevens claims prejudice as a result of his Trial Counsel's actions arguing the case against him was weak and only turned against him due to counsel's errors. A review of the complete record, however, leads me to conclude that Stevens suffered no prejudice as a result of the alleged actions of his Trial Counsel. Contrary to Stevens argument, I find the case against him was strong and that any slight error was undoubtedly harmless. Therefore his claims are barred by Rule 61(i)(3).

Nevertheless I will briefly address Stevens' contentions for the benefit of the Court. As to Ground one, on direct appeal, Stevens' argued that the trial court committed plain error when it failed either to issue a curative instruction or to declare a mistrial when the jury was exposed to inadmissible comments by Detective Roswell during the playing of codefendant Boyd's, taped statement to the jury pursuant to 11 *Del. C.* § 3507 ("3507"). The Delaware Supreme Court rejected Stevens' argument, holding that defense counsel's "... initial decision not to move for a mistrial or to accept the trial judge's offer of a curative jury instruction and counsel's failure to object to Detective Roswell's subsequent statements, all preclude any review for plain

---

[18] *State v. Gattis*, 1995 WL 790961 (Del. Super.).

[19] *Strickland*, 466 U.S. at 689; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

error."[20] The Court noted that, " ... [t]he plain error standard of appellate review is predicated upon a defense counsel's failure to object to the admission of improper evidence through oversight."[21] Because defense counsel initially objected to the admission of Detective Roswell's personal opinion embedded in the 3507 statement, decided not to move for a mistrial or to accept the trial judge's offer of a curative jury instruction and decided not to object to Detective Roswell's subsequent statements, the Supreme Court concluded that there was no oversight by defense counsel and therefore, plain error appellate review was precluded.

In its opinion upholding Stevens' conviction, the Supreme court suggested that the propriety of defense counsel's trial strategy could be better analyzed on a record expanded by a Rule 61 motion for postconviction relief.

In his initial response to Stevens' motion for postconviction relief, his counsel, Mr. Schmid, pointed out that he had engaged in pre-trial discussions with the State about redactions of the co-defendant's statement so that potentially prejudicial comments would be removed prior to playing the statement to the jury. This is certainly a reasonable pre-trial strategy.

Mr. Schmid did admit, however, that he did not review the redacted statement prior to its playing to the jury, which arguably should have been done. He was, nevertheless, paying very close attention to the 3507 statement while it was being

---

[20] *Stevens*, 3A.2d at 1077.

[21] *Id*. at 1076.

played to the jury because as the record shows he immediately objected when Detective Roswell made inadmissible comments during his interview of Boyd. Mr. Schmid's quick action thereby limited the jury's exposure to any other possible inadmissible comments by Detective Roswell. As Schmid stated in his affidavit, he did not ask for and declined the court's offer to give a curative jury instruction because he did not want to call any more attention to the officer's comments than had already been given. Clearly, this was a judgment call by an experienced criminal defense trial attorney. A decision made during many trials by many experienced and not so experienced, trial lawyers. I do not find that Mr. Schmid's decision was erroneous under the circumstances.

Trial Counsel went on to explain that he did not ask for a mistrial because he believed that under the circumstances at that point in the trial it would not be granted. It is reasonable to assume that this decision was based in large measure on Mr. Schmid's long and extensive trial experience in Kent County Superior Court.

Interestingly, in paragraph two of Mr. Schmid's second affidavit filed subsequent to the Supreme court's decision on direct appeal, he again confirms that he did not request a mistrial because in his personal opinion, no doubt borne of experience, it would not have been granted. Schmid suggests in hindsight that he might now request a mistrial under similar circumstances. Clearly, this is a result of the Supreme Court's opinion.

Mr. Schmid also confirms in his subsequent affidavit that his reason for not requesting or accepting the trial court's offer for a curative jury instruction was his

15

belief that the jury would not be effected by the testimony (Detective Roswell's comments embedded in the 3507 statement), since he had "stopped the tape soon enough that the offending reference might not leave an impression with the jury."[22] I conclude that Mr. Schmid's decision was both reasonable and appropriate under the circumstances.

At page 11 of the amended Rule 61 motion, Appointed Counsel argues that there was an insufficient foundation to admit Boyd's recorded statement because Boyd did not specifically say this his prior statement was truthful. What the prosecutor asked Boyd about the prior questions by Detective Roswell was: "And the questions that he asked you, you answered to the best of your ability at the time?" (A-71). Boyd Answered: "At the time." (A-71). Certainly implicit in this exchange between the prosecutor and Boyd was that the co-defendant was being truthful during the police interview. The witness also agreed that he was not being threatened during the police questioning and his mother was present in the room (A-71). While the specific word "truthful" is not used in this exchange (A-71), a fair reading of the entire context of Boyd's trial questioning was that the witness had been truthful in his prior out-of-court statement (A-70, A-71), especially since in the statement to the police Boyd admitted his own participation in the China King robbery. (A-29 to A-45).

The issue raised in the amended Rule 61 motion is whether answering "to the

---

[22] Affidavit of Lloyd A. Schmid, Jr., Sept. 16, 2011, ¶ 3.

16

best of your ability" is sufficiently analogous to saying the prior out-of-court statement was "truthful" to permit the introduction of the taped police interview of Boyd pursuant to 11 *Del. C.* § 3507. [23] By necessity there is some flexibility in the truthfulness affirmation requirement since on of the original purposes of § 3507 was to permit the introduction of prior inconsistent statements of turncoat witnesses who may disavow the truthfulness of the prior statement when questioned at trial. Boyd's acknowledging that he spoke to the police about the China King robbery "to the best of [his] ability" (A-71) is sufficient to satisfy any truthfulness foundation requirement of § 3507 here. Unfortunate prosecutorial syntax is not a basis to exclude the co-defendant's recorded police interview. [24]

There was no ineffectiveness assistance by Trial Counsel in not insisting upon a more direct questioning about the truthfulness of Boyd's prior out-of-court statement or in not objecting to a lack of a proper foundation for admission of a §

---

[23] Compare *Ray v. State*, 587 A.2d 439, 443 (Del 1991); *Adkins v. State*, 2010 WL 922765, at *2 (Del. March 15, 2010); *Cintra v. State*, 2004 WL 1195450, at *2 (Del. May 25, 2004) (When asked if her statement to the police office was truthful, she gave conflicting answers"); *Russell v. State*, 1996 WL 539823, at *2 (Del. Sept. 18, 1996)("There is no requirement . . .that the declarant affirm the truthfulness of his out-of-court statement. Indeed, § 3507 statements frequently are admitted into evidence in situations where the declarant is a so-called 'turncoat' witness who totally disavows the prior statement."); *State v. Gibbs*, 2015 WL 353932, at *4 (Del. Super. Jan. 27, 2015)(No requirement that witness testify out-of-court statement true since witness can testify that statement is true, is not true, or witness cannot remember.).

[24] *See Hoskins v. State*, 14 A.3d 554, 565-66 (Del. 2011)("did you [ ] agree at the time of your plea that the statements you gave to the police were truthful" a sufficient truthfulness inquiry).

17

3507statement of a trial witness. It is not particularly helpful to the defense to ask the co-defendant if his incriminating statement about the accused is also true. Vouching is normally to be avoided. Likewise, the trial judge did not abandon his duty as a gatekeeper for the admission of evidence in permitting Boyd's recorded police interview to be played for Stevens' jury. There was no reason to think that Boyd was being untruthful in admitting to the police that he committed a robbery with Stevens.

Stevens' contention here and his remaining claims that there was a State Constitutional violation may be summarily rejected for failure to follow the proper form for raising such an argument. Conclusory allegations that a defendant's right as guaranteed by the Delaware Constitution of 1897 have been violated is insufficient to sustain such an argument,[25]

In *Ortiz v. State*,[26] the Delaware Supreme Court delineated the proper form for raising a State Constitutional claim. In footnote 4, the Supreme Court expressly warned, "In the future, conclusory assertions that the Delaware Constitution has been violated will be considered to be waived on appeal."[27] Stevens has made no attempt

---

[25] *See Sykes v. State* , 953 A.2d 261, 266 n. 5 (Del. 2008)("Sykes's conclusory assertion that his rights under the Delaware Constitution have been violated results in his waiving the State constitutional law aspect of this argument."); *See also Jackson v. State*, 990 A.2d 1281, 1288 (Del. 2009); *Betts v. State*, 983 A.2d 75, 76 n. 3 (Del. 2009); *Jenkins v. State*, 970 A.2d 154, 158 (Del. 2009); Wallace *v. State*, 956 A.2d 630, 637-38 (Del. 2008).

[26] 869 A.2d 285, 290-91 & n.4 (Del. 2005).

[27] *Ortiz*, 869 A.2d at 291 n. 4.

18

in Ground one or elsewhere in his amended Rule 61 motion to delineate a proper State Constitutional claim.[28] Accordingly, this portion of Stevens' argument in Ground one and elsewhere has been waived and should be denied.

In addition to accusing Trial Counsel of being ineffective in regard to the admission of prior out-of-court statement of a prosecution witness, Appointed Counsel argues in Ground two that there was prosecutorial misconduct because the pretrial redactions in Boyd's recorded police interview were not extensive enough. This contention was not raised at trial in May 2009 or on direct appeal in 2010; accordingly, the claim is now procedurally barred by Superior Court Criminal Rule 61(i)(3), unless Stevens can demonstrate cause and prejudice sufficient to excuse the procedural default. Stevens can establish neither cause nor prejudice as to the new prosecutorial misconduct claim.

The August 22, 2008 recorded police interview of co-defendant Boyd by Dover Police Detective Roswell (A-8-47) "lasted a little over an hour. . . ." (A-75). Before the 2009 Superior Court jury trial, the prosecutor had redacted portions of the lengthy interview and the edited version played at trial was approximately 45 to 50 minutes in length (A-75). During the second day of trial, May 20, 2009, the State began playing the edited version of Boyd's prior recorded interview at 10:39 a.m. (A-75). Approximately thirty-five minutes later, the Boyd interview tape was stopped at 11:14 a.m. to address a defense objection at sidebar (A-75-76).

---

[28] *See Jones v. State*, 745 A.2d 856, 864-65 (Del. 1999) (listing criteria).

Initially, Trial Counsel objected to any further playing of Boyd's taped interview (A-76). In response, the prosecutor stated: "The detective is trying to ask him if he did anything else. He says no. He says he doesn't know if Jonathan did anything else. He did mention that Jonathan got pulled over in Maryland, he had a gun and weed in the truck. That's redacted." (A-76). The prosecutor then advised the trial judge that he wanted to continue playing the Boyd tape because there is a reference to Stevens having a knife and Boyd admits his involvement in the China King Robbery (A-76).

The prosecutorial misconduct claim now being asserted focuses on a few sentences near the end of the Boyd interview where Detective Roswell asks Boyd if Boyd and Stevens "have done some more stuff," and Boyd replies: "Oh nah. Be honest with you I haven't." (A-45). After this denial of other criminal activity by Boyd, Detective Roswell asks what else Stevens has done, and Boyd answers, "Only thing I know about is when he had the truck." (A-45). This vague reference to unspecified activity in "the truck" apparently involves Stevens being stopped in Maryland while driving Stratton's truck and having a gun and marijuana in his possession (A-76). Thus, it appears that the State did redact any reference to gun and marijuana possession, but missed four lines where Detective Roswell inquires about other criminal activity, and Boyd denies personally doing anything else and makes an oblique reference to Stevens doing something "when he had the truck." (A-45).

Equating this brief exchange between Detective Roswell and Boyd to the introduction of other crimes evidence against Stevens overstates the record. Boyd

20

expressly denied committing other crimes with Stevens (A-45), and when asked only about other conduct by Stevens, Boyd made only a vague reference to unspecified activity when Stevens had Stratton's truck (A-45). This does not amount to the introduction of D.R.E 404(b) other crimes evidence against Stevens.

Not every prosecutorial oversight in the redaction of a lengthy recorded interview requires reversal. Only omissions that are so unduly prejudicial that the reliability of the verdict is diminished require a new trial.[29] Note every omission or oversight that occurs at trial amounts to prosecutorial misconduct. As the Delaware Supreme Court has observed in connection with such minor matters, "The phrase 'prosecutorial misconduct' is not a talismanic incantation, the mere invocation of which will automatically lead to a reversal . . . we do not condone the magic bullet approach...loosely based on 'prosecutorial misconduct.'"[30]

The four unredacted lines of the lengthy Boyd record interview (A-45) upon which Stevens focuses appear to be nothing more nefarious than the prosecutor neglecting to remove some vague and extraneous matter. Boyd denies committing any other crimes with Stevens (A-45), and all the witness knows about Stevens' other activities is an unidentified matter when Stevens had Stratton's truck (A-45). None of this is sufficiently prejudicial to excuse the procedural default of this new

---

[29] *See Daniels v. State*, 859 A.2d 1008, 1011 (Del 2004).

[30] *Kurzmann v. State*, 903 A.2d 702, 713-14 (Del. 2006).

21

argument.[31]  While no action was taken at trial about these four now contested sentences (A-45), this was not a close case (B-59), and the inquiry did not affect a central issue in the robbery prosecution of Stevens.[32]

As to Ground three, claim that the State's committing a Brady violation for failing to disclose Ms. Stratton's conviction for Shoplifting nine years earlier.  Mr. Schmid's affidavit points out that the record shows that he extensively cross-examined Stratton during the trial.  Although he did not bring out her shoplifting conviction from July, 2000, (the only conviction he could have used pursuant to DRE 609 to impeach her credibility), I conclude it would not have changed the outcome of the trial.  Additionally, it is clear from a review of the transcript that counsel was aware that Ms. Stratton had some criminal history because the fact that she was on probation at the time of the offense was discussed due to her curfew requirement.  In fact Trial Counsel asked Ms. Stratton about a curfew requirement.  Boyd's statement, which the  jury heard, corroborated entirely the testimony of Stratton.  Moreover, there has been no evidence presented either during trial or post-trial that Boyd and Stratton conspired to blame Stevens for a crime he did not commit.  If anything, the trial evidence supports the exact opposite conclusion, i.e., Stevens actively participated in the charged crimes.

In addition, this was not even a close case.  The State presented convincing

---

[31]  Del. Super. Ct. Crim. R. 61(i)(3).

[32]  *See Hughes v. State*, 437 A.2d 559, 571 (Del 1981); *Sawyer v. State*, 634 A.2d 377, 380 (Del. 1993).

evidence establishing Stevens' guilt beyond a reasonable doubt, including but not limited to Boyd's confession detailing Stevens' role in the robbery, the victim's in-court identification of Stevens as the person who robbed the restaurant and beat him mercilessly during the robbery and the testimony of the Stevens' friend, Stratton, who said that she had loaned him her pick-up truck the night of the robbery and saw him burning the cash register drawer[33] in an alley when she picked both defendants up after they had run out of gas while fleeing the area immediately following the robbery. The restaurant's cash register was taken during the robbery and the register's cash drawer was recovered exactly where Stratton said she saw the defendants burning it.

Stevens' failure to show the outcome of the trial would have been different but for a lack of cross examination concerning Ms. Stratton's nine year-old Shoplifting conviction requires that his request for postconviction relief be denied. Furthermore, because this issue was not raised in the proceeding leading to the judgment of conviction or on direct appeal, it is procedurally barred under Rule 61(i)(3).

Appointed Counsel for Stevens argues that his due process rights were violated by the cumulative error of the matters alleged in Grounds one - three. This contention was never previously raised, even in Stevens' *pro se* 2010 Rule 61 motion (B-16-26), so the claim is now procedurally defaulted and barred by

---

[33] In his motion and response Appointed Counsel mistakenly claims Ms. Stratton testified she saw Stevens and Boyd burning a [complete] cash register. A review of the transcript reveals she stated she saw them only burning a cash register drawer. Transcript at A92-93.

Delaware Superior Court Criminal Rule 61(i)(3). This catch-all contention must also be rejected because it is not a basis for postconviction relief.

If none of Stevens' first three claims is a basis for postconviction relief, including the new contentions of prosecutorial misconduct for sloppy redactions and a *Brady* violation, an amalgation of these three alleged deficiencies affords no greater entitlement to relief.[34] When none of Stevens' first three claims qualify the petitioner for a new trial, a combination of the same meritless arguments is no more compelling.[35]

Stevens has failed to demonstrate any concrete prejudice stemming from counsel' representation. Consequently, Stevens' claims are not only procedurally barred they have no merit.

The Tenth Circuit Court of Appeals addressed this type of contention, thusly: "The final argument on appeal is that even if none of the above four grounds amount to reversible error in itself, the cumulative effect thereof compels reversal. We disagree with this reasoning. Zero plus zero equals zero, and four zeros added together still equals zero."[36] In Stevens' case three zeros added together still equals

---

[34] *See Michaels v. State*, 970 A.2d 223, 231-32 (Del. 2009) ("Cumulative error must derive from multiple errors that caused 'actual prejudice.' Here, none of the incidents upon which Hawthorne relies were prejudicial.")(citing *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008)).

[35] *See State v. Sykes*, 2014 WL 619503, at *38 (Del. Super. Jan. 21, 2014).

[36] *United States v. Villa*, 1995 WL 20268, at *3 (10th Cir. Jan. 18, 1995).

24

zero.[37] The adage "zero plus zero equals zero" applies to Ground four.

As for Stevens' fifth ground, request for an evidentiary hearing, as noted earlier I find there is no need for a hearing because I have concluded that the grounds for relief are meritless.

---

[37] *See United States v. Elwell*, 2011 WL 5007883, at *9 (D.N.J. Oct. 20, 2011); *Zebroski v. State*, 822 A.2d 1038, 1049 (Del. 2003)("Thus, a cumulative review of all the unfounded allegations of ineffective assistance of trial counsel would not change the result.").

## CONCLUSION

After reviewing the record in this case, it is clear that Stevens has failed to avoid the procedural bars of Rule 61(i). A review of his counsel's affidavit clearly shows that counsel represented Stevens in a competent fashion and was not ineffective. Additionally, Stevens has failed to demonstrate any concrete prejudice. Consequently, I recommend that Stevens' motion be denied as procedurally barred by Rule 61(i)(3) for failure to prove cause and prejudice.

_____
Commissioner Andrea M. Freud

AMF/dsc
oc:   Prothonotary
cc:   Hon. Jeffrey J Clark
      John Williams, Esquire
      Lloyd A. Schmid, Jr., Esquire
      Christopher S. Koyste, Esquire