**Jamel DANIELS, Defendant Below, Appellant,**

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 506,2003.**

Supreme Court of Delaware.

Submitted: Aug. 18, 2004.

Decided: Oct. 5, 2004.

Darryl K. Fountain, Law Office of Darryl K. Fountain, Wilmington, attorney for Appellant.

Timothy J. Donovan, Department of Justice, Wilmington, for Appellee.

Before STEELE, Chief Justice, HOLLAND, JACOBS, RIDGELY, Justices and NOBLE, Vice Chancellor,* constituting the court en banc.

RIDGELY, Justice.

A Superior Court jury convicted Jamel Daniels of First Degree Murder and Possession of a Firearm During the Commis-

* Sitting by designation pursuant to Del. Const. Art. IV § 12.

sion of a Felony. Daniels was sentenced to life imprisonment without probation or parole for murder and an additional twenty years for the weapons offense. He contends in this appeal that during closing argument the prosecutor misrepresented the evidence and thereby denied his due process right to a fair trial. We have reviewed the record and find that the prosecutor did not exceed the permissible range of argument. Accordingly, we affirm.

I.

Daniels was part of a drug distribution ring led by Leon Price which operated between New York City and West Chester, Pennsylvania. In April 2001, New Castle County police and paramedics found the body of Kensworth Griffith on the side of a road in Christiana Hundred. Griffith had been shot four times, twice from behind with a .45 caliber weapon, once in the stomach with a .25 caliber weapon, and once in the foot. Following an investigation, Daniels and Price were arrested for Griffith's murder. Price was separately tried and convicted in April 2003.[1] Daniels was tried and convicted in June 2003.

At Daniels' trial, witnesses testified that Griffith owed Price money for drugs he sold on Price's behalf and that Price was very angry about being unpaid. Another state witness familiar with Price and Daniels through their drug activities testified that Daniels was Price's "right-hand man." He testified that Daniels stayed with Price in his apartment for several months in early 2001. Price owned two guns, a .45 caliber Glock and a .25 caliber Derringer. Both he and Daniels had been seen in possession of these weapons.

1. We affirmed Price's conviction in September 2004. *See Price v. State,* Del.Supr., 858 A.2d 930, Steele, C.J. (2004).

The State presented testimony from two of Price's and Daniels' associates who witnessed the killing, Jose Martinez and Jamil Mosley. Martinez and Mosley were also from New York and assisted Price in selling drugs. On the day Griffith was killed, the two traveled with Daniels and Price to a gas station in West Chester, Pennsylvania, to pick up Griffith. According to Mosley, Price offered Griffith an opportunity to discharge his debt through additional drug sales. Griffith entered the vehicle, and the five drove to Delaware, eventually pulling off to the side of Adams Dam Road. Martinez and Mosley testified that Daniels and Price exited the vehicle and told Griffith to get out also. After he did, Price and Daniels shot Griffith several times outside the car and left his body on the side of the road.

The State introduced physical evidence consisting of a bullet from Griffith's body and shell casings found at the scene which had been fired from a .45 caliber Glock. The State also introduced a fresh, partially-smoked cigarette butt that was found near Griffith's body. Forensic analyst Teri Lawton testified to the results of DNA testing she performed on the cigarette butt. She testified:

> The DNA profiles of the evidentiary samples ... are consistent with being mixtures of the known DNA profiles of the reference samples.. Therefore, Jamel Daniels and Lou Price are not excluded as DNA contributors.... [2]

When asked to explain this finding, Lawton responded that "[e]ssentially, it means that both of Jamel Daniels and Lou Price's DNA profiles were present in the mixture." [3] Lawton further stated that no other DNA profiles were found in the sample taken from the scene.

During her closing argument the prosecutor referred to the testimony of Martinez and Mosley which identified Daniels and Price as shooters and the physical evidence that corroborated the testimony against them. She said:

> In addition to the evidence that—in addition to the testimony that was presented, the State also presented evidence, physical evidence and that evidence is very important, because it does two things.
>
> One, it corroborates the testimony of the witnesses, and secondly, it paints a very vivid picture, and one of the most important pieces of evidence is the Newport cigarette butt, State's Exhibit 5. This is important for a number of reasons.
>
> First of all, it's important because it tells you that the defendant was at the scene on April 10th, 2001, and at the scene, I mean at the scene, not in the car, merely watching what happened, but at the scene. As you recall from Detective DiNardo, he testified that the cigarette butt, which was fresh, actually still had ash attached to it when he collected it, was only feet away from Kenny's body, and inches away from the .45 caliber casings which were fired from the Glock. So, that tells you that the defendant was not in the car, but was actually physically standing there at the scene, outside of the car.[4]

Daniels objected to these statements, contending they mischaracterized the DNA evidence. The trial judge overruled the objection. He noted that the prosecutor did not argue that the DNA evidence, standing alone, put Daniels at the scene.

---

**2.** Trial Transcript of Jamel Daniels on June 2, 2003 at 31.

**3.** *Id.*

**4.** Trial Transcript of Jamel Daniels on June 6, 2003 at 32–33.

Instead, the trial judge found the argument to be based on inferences that could be drawn from the evidence and that the defense was free to argue the contrary. Daniels appeals this ruling.

## II.

■ At trial a prosecutor may argue "legitimate inferences of the appellant's guilt that flow from the evidence."[5] However, it is "unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw."[6]

■ Closing statements are "an aspect of a fair trial which is implicit in the Due Process Clause of the Fourteenth Amendment."[7] As such, they come within the prosecutor's obligation "to see that justice be done by giving [a] defendant a fair and impartial trial."[8] It is thus "as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."[9]

■ Not every improper remark, however, requires reversal.[10] Only comments that prejudicially affect the "substantial rights" of the accused compromise the integrity of the verdict and the fairness of the trial.[11] We review a claim of prosecutorial misconduct *de novo* to determine whether the conduct was improper or prejudicial.[12] In determining the prejudicial effect of improper prosecutorial argument, we assess three aspects of trial: (1) the closeness of the case; (2) the centrality of the issue affected by the alleged error; and (3) the steps taken to mitigate any subsequent effects of the alleged error.[13]

## III.

■ Daniels argues that the prosecutor mischaracterized the significance of the DNA evidence. We have carefully reviewed the prosecutor's argument and find no misconduct in this case. The prosecutor's argument referred to the physical evidence which included the fresh cigarette butt and the circumstances under which this evidence was found near Griffith's body. She did not directly mention the DNA evidence which linked both Daniels and Price to the fresh cigarette butt, nor did she characterize the specific testimony of the forensic analyst. Rather, she argued an inference which could be drawn from the evidence that both Daniels and Price were at the scene. A jury could infer that they shared a fresh cigarette at

5. *Hooks v. State*, 416 A.2d 189, 204 (Del. 1980).

6. *Sexton v. State*, 397 A.2d 540, 545 (Del. 1979) quoting ABA Standards, the Prosecution and Defense Function (approved Draft, 1971).

7. *Donnelly v. DeChristoforo*, 416 U.S. 637, 649, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (Douglas, J., dissenting).

8. *Bennett v. State*, 164 A.2d 442, 446 (Del. 1960).

9. *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

10. *Cf. United States v. Sherman*, 171 F.2d 619, 625 (2d Cir.1948) ("No prosecution is tried with flawless perfection; if every slip is to result in reversal, we shall never succeed in enforcing the criminal law at all.").

11. *See Sexton v. State*, 397 A.2d 540 (Del. 1979); *Edwards v. State*, 320 A.2d 701 (Del. 1974). *See also* SUPER. CT. CRIM. R. 52(a) ("Any error ... which does not affect substantial rights shall be disregarded.").

12. *Hunter v. State*, 815 A.2d 730 (Del.2002).

13. *Hughes v. State*, 437 A.2d 559, 569 (Del. 1981).

the murder scene outside the car just as they shared the task of killing Griffith.

When the prosecutor's argument is viewed in the context of all the evidence, we agree with the trial judge's assessment of that argument, namely that the prosecutor here argued an inference which could be drawn from the evidence.[14] In overruling Daniels' objection, the trial judge correctly observed that both sides were free to argue the inferences which could be drawn by the jury from the evidence. In fact, that is exactly what happened here.[15] The comments of the prosecutor objected to by Daniels were reasonable inferences that could be drawn from the evidence which the jury was free to accept or disregard in favor of the alternative inferences argued by defense counsel.

A prosecutor is not confined to a mere repetition of the testimony in closing argument.[16] Nor does the existence of alternative inferences make her argument of the inferences of guilt to be drawn from the evidence improper. This case is distinguishable from *Hughes* and other prosecutorial misconduct cases.[17] We hold that the trial judge properly overruled the objection to the prosecutor's argument in this case and that a *Hughes* analysis of the prejudicial effect of improper prosecutorial argument is not warranted in this case.

The judgment of the Superior Court is **AFFIRMED**.

---

**14.** *Hooks v. State*, 416 A.2d at 204. *See also Brokenbrough v. State*, 522 A.2d 851, 855 (Del. 1987); *Boatson v. State*, 457 A.2d 738, 742 (Del.1983); *Hughes v. State*, 437 A.2d 559, 570 (Del.1981).

**15.** Daniels' counsel told the jury:
You are to decide the significance of the DNA evidence, not the prosecution.... The cigarette butt found outside, on the ground, according to Teri Lawton, doesn't put the defendant at the scene. It puts his DNA at the scene.... It's just as likely Lou Price, when he got out of the car, put the cigarette there.... Trial Transcript of Jamel Daniels on June 6, 2003 at 50.

**16.** *See Michael v. State*, 529 A.2d 752, 762 (Del.1987); *Hooks*, 416 A.2d at 204.

**17.** *See Hughes*, 437 A.2d at 570 (discussing "crucial significance" of blood evidence and

prosecutor's disregard for timing of statements made by defendant). *See also Price*, ID No. 0106010693, at 11 (denouncing as "astonishing" prosecutor's disregard of trial judge's order in closing arguments but finding no prejudice); *Hunter*, 815 A.2d at 736 (providing that the prosecutor's suggestion that role of defense counsel was to "trick" jury into acquitting defendant held improper); *Boatson v. State*, 457 A.2d 738, 742 (Del. 1983) (holding curative instruction sufficient where prosecutor during summation referred to statements neither in evidence nor made by defendant); *Hooks*, 416 A.2d at 207–08 (recounting prosecutor's improper, but nonetheless curable, statements to jury attacking defendant's religion and character). *See generally DeAngelis v. Harrison*, 628 A.2d 77, 80 (Del.1993) (collecting cases).