Keith W. WYNN, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 542, 2013.

Supreme Court of Delaware.

Submitted: May 14, 2014.

Decided: May 20, 2014.

---

41. BB094 (Powers Dep.), Tr. 171:19–22, 173:19–174:5.

42. Reply Br. at 5.

Francis E. Farren, Esquire, Newark, Delaware, for appellant.

Maria T. Knoll, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Keith Wynn ("Wynn") appeals from a jury conviction in the Superior Court of one count of Burglary in the Second Degree and two counts of

Felony Theft. Wynn raises two claims on appeal. First, he contends that the prosecutor committed misconduct by stating that Wynn was not permitted on the second floor of a dwelling. Second, he contends that the prosecutor argued for an application of Delaware's burglary statute that was not supported by the record evidence.

We have concluded that both of Wynn's arguments are without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

In 2012, Brian and Amanda Sands discovered that money and jewelry had been stolen from their upstairs bedrooms at their home in Middletown. Brian's parents, Michael and Patricia, also lived at the Middletown home.

The Sands often entrusted Wynn, a family friend, to care for their dogs and get the mail when they were away. Wynn also had the code to their garage door, but was not permitted on the second floor bedrooms without permission. The police interviewed Wynn, who admitted to taking the jewelry and money from Michael and Patricia's bedroom.

Wynn was charged in the Superior Court with Burglary in the Second Degree and two counts of Felony Theft. At trial, Wynn stipulated that he was guilty of the two counts of Theft, but denied the burglary charge. During his closing argument, the prosecutor made references to Wynn's unauthorized presence on the second floor of the Sands' residence and the proper application of Delaware's burglary statute.

A jury found Wynn guilty of all charges. The trial judge sentenced Wynn to seven years at Level V incarceration, suspended after one year for decreasing levels of supervision. This is Wynn's direct appeal.

### Standard of Review

■ Wynn contends that the prosecutor made two statements that constituted misconduct and that require reversal of his burglary convictions. Our review of alleged prosecutorial misconduct depends on whether the issue was fairly presented at trial. If the alleged misconduct was not objected to at trial, then we review only for plain error.[1] "If defense counsel raised a timely and pertinent objection to prosecutorial misconduct at trial, or if the trial judge intervened and considered the issue *sua sponte,* we essentially review for 'harmless error.' "[2]

■ "The first step in the harmless error analysis involves a *de novo* review of the record to determine whether misconduct actually occurred. If we determine that no misconduct occurred, our analysis ends there."[3] If our review finds that the prosecutor did engage in misconduct, we then examine whether the improper comments or conduct prejudicially affected the defendant's substantial rights necessitating a reversal of his conviction.[4]

■ To make this determination, we apply the three-factor *Hughes* test, which are: "(1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error."[5] If we determine after the *Hughes* test that the errors do not require reversal, then the fourth and

1. *Baker v. State,* 906 A.2d 139, 150 (Del.2006).

2. *Id.*

3. *Id.* at 148 (footnote omitted) (citing *Daniels v. State,* 859 A.2d 1008, 1011 (Del.2004)).

4. *Id.* at 149 (citing *Daniels,* 859 A.2d at 1011).

5. *Id.* (citing *Hughes v. State,* 437 A.2d 559, 571 (Del.1981)).

final step requires that we examine all of the statements using the *Hunter* test.[6] Under the *Hunter* test, we consider "whether the prosecutor's statements or misconduct are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process."[7]

### Second Floor Statement Proper

■ The first statement of misconduct alleged by Wynn relates to the prosecutor's argument about Wynn's permission to be on the second floor of the Sands' residence. The prosecutor stated: "... [Wynn's] access was for a limited purpose, mail and dogs, and at no point was he allowed onto that second floor." Wynn contends that this was misconduct because the record established that Wynn had been allowed on the second floor to sleep as a guest.

■■ Wynn sufficiently raised an objection to this statement at trial. Therefore, our review is for harmless error. It is well-settled law that "prosecutors may not misrepresent the evidence presented at trial."[8] In *Kurzmann v. State*, however, this Court held that the prosecutor's comments might be hyperbolic argument, in which the prosecutor made legitimate inferences from the evidence at trial, but if they are supported by the record, are not misstatements, and, in context, such comments are not improper in any way.[9]

A *de novo* examination of the complained-of statement shows that it was not misconduct. The record reflects that the statement by the prosecutor is a logical inference of the facts presented to the jury.

In this case, the prosecutor's statements were based on the facts in evidence. Both Michael and Patricia Sands testified that Wynn was not allowed in their upstairs bedroom. Michael further stated that Wynn was permitted in the dwelling, but he did not have permission to be in the master bedroom. Brian Sands also testified that Wynn only had limited access to the Sands' home, and that he was not allowed upstairs alone.

Although it could be possible to interpret the prosecutor's statement to mean that Wynn was *never* allowed on the second floor, this assertion is made out of context. Based on the record evidence, the prosecutor's statement can reasonably be construed to mean that Wynn did not have access to the second floor *at the time* of the theft. Because the prosecutor's statement is a legitimate inference supported by the record, it did not constitute misconduct. Thus, Wynn's first claim is without merit.

### Burglary Statute Comments Proper

■ Wynn next argues that the prosecutor committed misconduct when he argued an application of the second degree burglary statute that was not supported by the evidence. Wynn raised the issue of statutory interpretation in his Motion for Acquittal, although he did not object to the prosecutor's statements at trial.[10]

---

**6.** *Id.* (citing *Hunter v. State*, 815 A.2d 730, 732 (Del.2002) (per curiam)).

**7.** *Id.*

**8.** *Flonnory v. State*, 893 A.2d 507, 540 (Del. 2006) (citing *Hunter*, 815 A.2d at 735).

**9.** *Kurzmann v. State*, 903 A.2d 702, 713 (Del. 2006); *see also Hooks v. State*, 416 A.2d 189,

204 (Del.1980) ("[The prosecutor] is allowed and expected to explain all the legitimate inferences of the appellants' guilt that flow from that evidence.").

**10.** The State reclassified Wynn's second claim as an appeal on his denied Motion of Acquittal. Although Wynn's arguments essentially restate those he made in his motion below, his appeal clearly focuses on the statements of

The Delaware Code provides: "A person is guilty of burglary in the second degree when the person knowingly enters or remains unlawfully ... [i]n a dwelling with intent to commit a crime therein."[11] The definitions provision explains that "[a] person 'enters or remains unlawfully' in or upon premises when the person is not licensed or privileged to do so."[12] "The 'intent to commit a crime therein' may be formed prior to the unlawful entry, be concurrent with the unlawful entry or such intent may be formed after the entry while the person remains unlawfully."[13]

In his rebuttal closing argument, the prosecutor made the following statement:

> So he enters unlawfully because he is entering for no purpose that he's supposed to be entering, knowing that the family is not there, or there's a second theory, remains unlawfully. Had he gone inside, even if it was to see if Brian was there, even if it was to walk the dog, even if it was to get the mail, as soon as that ends and he takes one foot upstairs—the dogs are housed on the first floor. You heard that as part of the testimony. As soon as he takes a step upstairs, is he not remaining unlawfully in that premise? And it is upstairs where he ultimately admits to having committed the thefts.

At trial, Wynn objected to these comments on the basis that the prosecutor was arguing facts not in the record. The Superior Court, however, found that its "memory of the statement by the defendant on the tape is consistent with [the prosecutor's] representation." The trial judge added, "I do not agree with you that the

record will reflect a misleading statement by [the prosecutor]."

After the jury received their final instructions, the Superior Court heard further argument on the motion for judgment of acquittal but continued to reserve judgment. After the jury returned its verdict finding Wynn guilty of all charges, the Superior Court found that the evidence was "more than adequate" for the State to meet its burden of proof with regard to the crime of Burglary in the Second Degree. Specifically, the court found that "[t]here was evidence of record that the defendant was not permitted and it seemed to me, based on his statement that was recorded and played for the jury, that he understood, at least once he entered, that his remaining in the bedrooms at the time and place of the theft was improper, unlawful and without authority."

The record shows that although Wynn was allowed in the Sands' residence when someone was home, and to walk the dogs or get the mail, when it was unoccupied, he did not have permission to be on the second floor of the house at the time he stole the Sands' belongings.[14] By his own admission and by his actions, Wynn remained in the residence to steal. The prosecutor's query to the jury that "as soon as he [took] a step upstairs, is he not remaining unlawfully in that premise?" was a legitimate argument to make the point that, even if Wynn had been legitimately on the premises to get the mail or walk the dog, he did not have permission to access the private second floor bedroom areas. Accordingly, Wynn's second argument is without merit.

---

the prosecutor. Thus, only his claim of prosecutorial misconduct is at issue in Wynn's second claim on appeal.

**11.** Del.Code Ann. tit. 11, § 825(a)(1).

**12.** *Id.* § 829(d).

**13.** *Id.* § 829(e).

**14.** *See Hamilton v. State,* 82 A.3d 723, 728 (Del.2013).

*Conclusion*

The judgments of the Superior Court are affirmed.