# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | ID No. 0107003610 |
| | ) | |
| JAMEL DANIELS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: November 15, 2024
Decided: November 22, 2024

*Upon Defendant Jamel Daniels' Motion for Postconviction Relief,*
**DENIED.**

*Upon Motion to Withdraw as Counsel of Patrick J. Collins, Esquire,*
**GRANTED.**

## <u>ORDER</u>

Andrew R. Fletcher, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington DE 19801, Attorney for the State of Delaware.

Patrick J. Collins, Esquire, COLLINS PRICE & WARNER, 8 East 13th Street, Wilmington, DE 19801, Attorney for the Defendant Jamel Daniels.

Jamel Daniels, James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, DE 19971, Defendant.

**WHARTON, J.**

This 22nd day of November, 2024, upon consideration of Defendant Jamel Daniels' ("Daniels") Motion for Postconviction Relief ("PCR Motion"),[1] the Motion to Withdraw as Counsel of Patrick J. Collins,[2] Daniels' Response to the Motion to Withdraw,[3] the State's Response,[4] and the record in this case, it appears to the Court that:

1.     Daniels was convicted of first degree murder and possession of a firearm during the commission of a felony by a jury on June 8, 2003 and sentenced to life in prison plus 20 years on both charges.   His direct appeal was unsuccessful.[5]  Daniels' first PCR motion was filed through counsel on March 19, 2018[6] and supplemented on April 30, 2010.[7]   That motion was denied by the Superior Court.[8]  The Delaware Supreme Court affirmed that decision.[9]  Daniels' second PCR motion, filed *pro se* on September 1, 2013,[10] was denied on August 1, 2014.[11]  That decision was affirmed as well.[12]

2.     Daniels filed this PCR motion, his third, also *pro se*, alleging actual

---

[1] PCR Mot., D.I. 143.
[2] Mot. to Withdraw, D.I. 170.
[3] Def.'s Resp., D.I. 173
[4] State's Resp., D.I. 175.
[5] *Daniels v. State,* 859 A.2d 1008 (Del. 2004).
[6] D.I. 94.
[7] D.I. 108.
[8] D.I. 115.
[9] *Daniels v. State,* 2011 WL 1900438 (Del. 2011).
[10] D.I. 123.
[11] D.I. 131.
[12] *Daniels v. State,* 2014 WL 7010919 (Del. 2014).

innocence on March 24, 2023,[13] along with two motions for appointment of counsel.[14] The Court granted those motions on June 23, 2023. On February 26, 2024, the Court was advised that Patrick J. Collins, Esquire would be representing Daniels.[15] That day, the Court entered a scheduling order.[16] On September 20, 2024, Mr. Collins filed this Motion to Withdraw as Counsel and simultaneously advised Daniels of his opportunity to submit a response within 30 days.[17] Daniels responded on October 11, 2024.[18] The State responded on November 15th.[19]

3.     In its Order on direct appeal, the Delaware Supreme Court set out the following facts:

> Daniels was part of a drug distribution ring led by Leon Price which operated between New York City and West Chester, Pennsylvania. In April 2001, New Castle County police and paramedics found the body of Kensworth Griffith on the side of a road in Christiana Hundred. Griffith had been shot four times, twice from behind with a .45 caliber weapon, once in the stomach with a .25 caliber weapon, and once in the foot. Following an investigation, Daniels and Price were arrested for Griffith's murder. Price was separately tried and convicted in April 2003. Daniels was tried and convicted in June 2003.
>
> At Daniels' trial, witnesses testified that Griffith owed

---

[13] D.I. 143.
[14] D.I. 144, 152, .
[15] D.I. 160.
[16] D.I. 162.
[17] Mot. to Withdraw as Counsel, D.I.
[18] Def.'s Resp., D.I. 173.
[19] State's Resp., D.I. 175.

Price money for drugs he sold on Price's behalf and that Price was very angry about being unpaid. Another state witness familiar with Price and Daniels through their drug activities testified that Daniels was Price's "right-hand man." He testified that Daniels stayed with Price in his apartment for several months in early 2001. Price owned two guns, a .45 caliber Glock and a .25 caliber Derringer. Both he and Daniels had been seen in possession of these weapons.

The State presented testimony from two of Price's and Daniels' associates who witnessed the killing, Jose Martinez and Jamil Mosley. Martinez and Mosley were also from New York and assisted Price in selling drugs. On the day Griffith was killed, the two traveled with Daniels and Price to a gas station in West Chester, Pennsylvania, to pick up Griffith. According to Mosley, Price offered Griffith an opportunity to discharge his debt through additional drug sales. Griffith entered the vehicle, and the five drove to Delaware, eventually pulling off to the side of Adams Dam Road. Martinez and Mosley testified that Daniels and Price exited the vehicle and told Griffith to get out also. After he did, Price and Daniels shot Griffith several times outside the car and left his body on the side of the road.

The State introduced physical evidence consisting of a bullet from Griffith's body and shell casings found at the scene which had been fired from a .45 caliber Glock. The State also introduced a fresh, partially-smoked cigarette butt that was found near Griffith's body. Forensic analyst Teri Lawton testified to the results of DNA testing she performed on the cigarette butt. She testified:

> The DNA profiles of the evidentiary samples ... are consistent with being mixtures of the known DNA profiles of the reference samples. Therefore, Jamel Daniels

4

and Lou Price are not excluded as DNA contributors…

When asked to explain this finding, Lawton responded that "[e]ssentially, it means that both of Jamel Daniels and Lou Price's DNA profiles were present in the mixture." Lawton further stated that no other DNA profiles were found in the sample taken from the scene.[20]

4. Daniels' *pro se* PCR motion alleges he is actually innocent based on purportedly newly discovered evidence so as to overcome the procedural bars of Rule 61.[21] That newly discovered evidence takes the form of: (1) proposed testimony of Leon Price ("Price") stemming from a "newly found belief in justice and a desire to do the correct thing" exculpating Daniels and incriminating Jose Martinez ("Martinez");[22] and (2) Daniels' medical records demonstrating that, due to injuries he sustained in a prior shooting, he was physically unable to perform the movements he was described as performing at trial.[23] In support of the former claim, Daniels attached to his PCR Motion an affidavit from Price stating that he was coerced by "cartel-backed killers who lived in his neighborhood, who knew where [his] then wife and three children lived, to put the killing on Jamel Daniels."[24] In fact, according to the affidavit, the second shooter was Martinez.[25]

---

[20] *Daniels v. State,* 859 A.2d at 1009-1010.
[21] *Pro Se* Brief in Support of PCR Mot., D.I. 145.
[22] *Id.* at 11-13.
[23] *Id.* at 29.
[24] *Id.* at Ex. B.

5

In support of the latter, Daniels wrote that his medical records were attached to his PCR Motion, but, in fact, they were not.[26]

5.      In his Motion to Withdraw, Mr. Collins presents a thorough recapitulation of the evidence presented at trial as well as the procedural history of the case.[27] He also carefully assesses Daniels' two claims of actual innocence based on newly discovered evidence. With respect to Price's new version of events recanting his previous version, Mr. Collins finds Price's admission that he was a shooter credible and his claim that he was reluctant to implicate Martinez because of Martinez' cartel-backed family plausible.[28] But, he finds Price's description of Daniels as not part of his crew and only in town for a few days to party demonstrably false.[29] Witnesses identified Daniels as being Price's right-hand man and in the Delaware area much longer than a few days.[30] Additionally, Daniels was a longtime associate of Price and a member of Price's drug-dealing crew. In his statement to Mr. Collins' postconviction investigator, Price included Daniels as part of his crew that were always together.[31] Daniels also made contradictory statements

---

[25] *Id.*
[26] *Id.* at Ex. C.
[27] Mot. to Withdraw, D.I. ***
[28] *Id.* at 33.
[29] *Id.*
[30] *Id.*
[31] *Id.*

6

about where Daniels was at the time of the shooting.[32]  In his first of three interviews with Mr. Collins' postconviction investigator, Price said Daniels was at a hotel.[33]  In his second statement he said that Daniels was in the front passenger seat at the time of the murder, but did not get out of the car.[34]  In his third statement, Price reverted to a version where Daniels was at the hotel.[35]  As to Daniels' medical records, Mr. Collins found them in the file, having been sent to the Public Defender's Office by Bellevue Hospital in 2002 prior to trial, thereby negating any argument that they constitute newly discovered evidence.[36]

6.      In his response, Daniels alleges: (1) Mr. Collins is not representing him effectively because he failed to communicate with him and investigate his case; (2) Mr. Collins did not discuss his decision to move to withdraw indicating "a conflict of interest or abandonment;" and (3) he has been deprived of his right to competent counsel.[37]  He asks the Court to deny the Motion to Withdraw pending further investigation, appoint new counsel, and hold a hearing to address the "issues surrounding my attorney withdrawal."[38]  Daniels has little to say regarding Mr. Collins' substantive conclusions on the two issues he raised in his *pro se* PCR

---

[32] *Id.* at 34.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at 35.
[37] Def.'s Resp. at 3, D.I. 173.
[38] *Id.*

motion. With regard to Price's inconsistent statements, he only notes that Price's first statement to the investigator was consistent with his affidavit, he was "a little confused on a few things" in his second statement, but was "back on track" in his third.[39] He accuses Mr. Collins of failing to take into account Price's "mental state and whatever else he was going through."[40] He expressed surprise the Mr. Collins was able to locate his medical records "out of the blue."[41]

7.     The State concurs with Mr. Collins assessment of Daniels two actual innocence claims.[42] In addition to the general suspicion that is warranted in considering recantations offered by inmate witnesses, the State also highlights the obvious inconsistencies and apparent falsities in Price's various statements.[43] Regarding Daniels' medical records, the State notes they were available at trial, and thus not newly discovered, but given Daniels testimony that he was in a car riding around on the day of the murder and not immobilized, the records would have little probative effect.[44]

8.     The State also addresses Daniels' response to Mr. Collins' motion. It observes that "other than asserting that Price was confused during the interview with the investigator, Daniels does not appear to dispute any specific factual or legal

---

[39] *Id.* at 3.
[40] *Id.*
[41] *Id.*
[42] State's Resp., D.I. 175.
[43] *Id.* at 9-11.
[44] *Id.* at 11.

basis for Postconviction Counsel's opinion that Daniels' postconviction claim of actual innocence is wholly without merit."[45] The State finds Daniels' claims about Mr. Collins' representation either unsupported by any facts or based on a misapprehension of postconviction counsel's role.[46]

9. Under Delaware Superior Court Rules of Criminal Procedure, a motion for postconviction relief can be barred for time limitations, successive motions, procedural default, or former adjudication.[47] A motion exceeds time limitations if it is filed more than one year after the conviction becomes final, or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right was first recognized by the Supreme Court of Delaware or the United States Supreme Court.[48] A second or subsequent motion is considered successive and therefore barred and subject to summary dismissal unless the movant was convicted after a trial and "pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or "pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the

---

[45] *Id.* at 13.
[46] *Id.* at 13-16.
[47] Super. Ct. Crim. R. 61(i).
[48] Super. Ct. Crim. R. 61(i)(1).

conviction ... invalid."[49]  Grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred as procedurally defaulted unless the movant can show "cause for relief" and "prejudice from [the] violation."[50]  Grounds for relief formerly adjudicated in the case, including "proceedings leading to the judgment of conviction, in an appeal, in a post-conviction proceeding, or in a federal habeas corpus hearing" are barred.[51]  The bars to relief do not apply either to a claim that the court lacked jurisdiction or to a claim that pleads with particularity that new evidence exists that creates a strong inference of actual innocence,[52]

10.    To prove a claim that newly discovered evidence exists that creates a strong inference of actual innocence, a petitioner must show "the evidence (a) will probably change the result if a new trial is granted; (b) was discovered since the trial and could not have been discovered before by the exercise of due diligence; and (c) is not merely cumulative or impeaching."[53]  Satisfying the actual innocence test is a heavy burden and such claims are rare.[54]  Furthermore, to prove "[i]nnocence of the 'acts underlying the charges' requires 'more than innocence of intent; it requires

---

[49] Super. Ct. Crim R. 61(i)(2); Super. Ct. Crim. R. 61(d)(2).
[50] Super. Ct. Crim. R. 61(i)(3).
[51] Super. Ct. Crim. R. 61(i)(4).
[52] Super. Ct. Crim. R. 61(i)(5).
[53] *Taylor v. State*, 180 A.3d 41 (Del. 2018) (citing *Downes v. State*, 771 A.2d 289, 291 (Del. 2001).
[54] *Purnell v. State*, 254 A.3d 1053, 1100 (Del. 2021).

10

new evidence that a person other than the petitioner committed the crime.'"[55] The Delaware Supreme Court also held in *Purnell v. State* that "a body of new evidence that goes only to the weight or credibility of that which was presented to the jury is almost never adequate to meet the demanding bar for being granted a new trial."[56] Attacking a witness's credibility in general will not be sufficient to satisfy the actual innocence standard.[57]

11. Before addressing the merits of a defendant's motion for postconviction relief, the Court must first apply the procedural bars of Superior Court Criminal Rule 61(i).[58] If a procedural bar exists, then the Court will not consider the merits of the postconviction claim.[59]

12. Since this motion is Daniels' third motion for postconviction relief filed many years after his conviction became final, it is barred as repetitive and untimely unless he can overcome those bars to relief. Daniels attempts to do just that by pleading that newly discovered evidence exists that creates a strong inference that he is innocent in fact of the charges. Of the two grounds for relief advanced in Daniels *pro se* PCR Motion only one claim need be considered on the merits. That claim relates to Price's new version of events. The second claim that his medical

---

[55] *Id.* at 1095 (citing *State v. Taylor*, 2018 WL 3199537, at *7 (Del. Super. Ct. June 28, 2018), *aff'd*, 206 A.3d 825 (Del. 2019)).
[56] *Id.* at 1098.
[57] *Id.*
[58] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[59] *Id.*

11

records constitute newly discovered evidence fails because the records are not newly discovered, having been in his attorneys file before trial. Further, the records themselves would have been insufficient, if introduced at trial, to have probably altered the outcome of the trial. The Court finds this claim is barred.

13. The Court turns then to the only remaining claim. It finds that Daniels has failed to meet his heavy burden to satisfy the actual innocence test. The testimony of Leon Price most assuredly would not change the result of a new trial if one were granted. Not only are Price's recent statements inconsistent with his original version of events in 2001, but they are inconsistent with each other with respect to his relationship with Daniels and Daniels' location at the time of the murder. They also are contradicted by other witnesses who place Daniels at the scene of the murder using a Glock handgun to shoot the victim. Those witnesses are corroborated by the physical evidence of a freshly smoked cigarette with both Price's and Daniels' DNA on it.

14. Finally, Daniels' response to the Motion to Withdraw fails to contest Mr. Collins conclusions regarding his claims in any meaningful way. Nor does he support his allegations that Mr. Collins was ineffective and/or conflicted with any specific arguments that Mr. Collins should have made on his behalf or facts supporting his allegations of a conflict of interest.

15. Accordingly, having carefully reviewed the record itself, the Court

concurs with Mr. Collins that Daniels postconviction claims are wholly without merit such that he could not ethically advocate them. It also declines Daniels' invitation to appoint new postconviction counsel as that request is similarly without merit.

**THEREFORE,** the reasons stated above Jamel Daniels' Motion for Postconviction Relief is **DENIED**. Patrick J. Collins' Motion to Withdraw as Counsel is **GRANTED**.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.