IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMEL DANIELS, | § | |
| | § | |
| Defendant Below, | § | No. 532, 2024 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 0107003610 (N) |
| | § | |
| Appellee. | § | |

Submitted: March 10, 2025
Decided:  May 6, 2025

## **ORDER**

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

After considering the appellant's opening brief, the appellee's motion to affirm, the appellant's motion for appointment of counsel and additional briefing or remand to the Superior Court, and the record on appeal, it appears to the Court that:

(1)    The appellant, Jamel Daniels, filed this appeal from a Superior Court order denying his third motion for postconviction relief under Superior Court Criminal Rule 61.[1]  He also moved for appointment of counsel and additional briefing or remand of this matter to the Superior Court in light of the United States

---

[1] *State v. Daniels*, 2024 WL 4867172 (Del. Super. Nov. 22, 2024).

Supreme Court's recent decision in *Glossip v. Oklahoma*.[2]  The State of Delaware moved to affirm the judgment below on the basis that it is manifest on the face of Daniels' opening brief that his appeal is without merit.  We agree and affirm.  We also deny Daniels' motion for appointment of counsel and additional briefing or remand.

(2)     We previously described the events leading to Daniels' convictions as follows:

> Daniels was part of a drug distribution ring led by Leon Price which operated between New York City and West Chester, Pennsylvania.  In April 2001, New Castle County police and paramedics found the body of Kensworth Griffith on the side of a road in Christiana Hundred. Griffith had been shot four times, twice from behind with a .45 caliber weapon, once in the stomach with a .25 caliber weapon, and once in the foot.  Following an investigation, Daniels and Price were arrested for Griffith's murder.  Price was separately tried and convicted in April 2003.  Daniels was tried and convicted in June 2003.

> At Daniels' trial, witnesses testified that Griffith owed Price money for drugs he sold on Price's behalf and that Price was very angry about being unpaid.  Another state witness familiar with Price and Daniels through their drug activities testified that Daniels was Price's "right-hand man."  He testified that Daniels stayed with Price in his apartment for several months in early 2001.  Price owned two guns, a .45 caliber Glock and a .25 caliber Derringer.  Both he and Daniels had been seen in possession of these weapons.

> The State presented testimony from two of Price's and Daniels' associates who witnessed the killing, Jose Martinez and Jamil Mosley. Martinez and Mosley were also from New York and assisted Price in selling drugs.  On the day Griffith was killed, the two traveled with

[2] 145 S. Ct. 612 (2025).

2

Daniels and Price to a gas station in West Chester, Pennsylvania, to pick up Griffith. According to Mosley, Price offered Griffith an opportunity to discharge his debt through additional drug sales. Griffith entered the vehicle, and the five drove to Delaware, eventually pulling off to the side of Adams Dam Road. Martinez and Mosley testified that Daniels and Price exited the vehicle and told Griffith to get out also. After he did, Price and Daniels shot Griffith several times outside the car and left his body on the side of the road.[3]

(3) The State introduced physical evidence, including a bullet from Griffith's body and shell casings found at the scene that had been fired from a .45 caliber Glock.[4] The State also introduced "a fresh, partially-smoked cigarette butt that was found near Griffith's body" and expert testimony that Daniels' and Price's DNA profiles were present in a DNA mixture found on the cigarette butt.[5] After the jury found Daniels guilty of first-degree murder and possession of a firearm during the commission of a felony, the Superior Court sentenced Daniels to life imprisonment plus twenty years. This Court affirmed the Superior Court's judgment on appeal.[6] This Court also affirmed the Superior Court's denial of two motions for postconviction relief that Daniels filed under Rule 61.[7]

---

[3] *Daniels v. State*, 859 A.2d 1008, 1009–10 (Del. 2004) (citations omitted).

[4] *Id.* at 1010.

[5] *Id.*

[6] *Id.* at 1012.

[7] *Daniels v. State*, 105 A.3d 988, 2014 WL 7010919 (Del. Dec. 8, 2014) (TABLE) (affirming the Superior Court's denial of Daniels' second motion for postconviction relief); *Daniels v. State*, 21 A.3d 596, 2011 WL 1900438 (Del. May 16, 2011) (TABLE) (affirming the Superior Court's denial of Daniels' first motion for postconviction relief).

(4) On March 16, 2023, Daniels filed his third motion for postconviction relief, an accompanying brief, and a motion for appointment of postconviction counsel. He argued that there was new evidence creating a strong inference of his actual innocence. The new evidence consisted of: (i) Price's affidavit, dated April 23, 2019, stating that Martinez was the second shooter and that Price had falsely accused Daniels, who was never part of his crew, due to threats he received from killers associated with Martinez's cartel-linked grandfather; and (ii) medical records demonstrating that he could not have participated in Griffith's murder as shown at trial. The Superior Court granted Daniels' motion for appointment of postconviction counsel ("Postconviction Counsel").

(5) On September 20, 2024, Postconviction Counsel moved to withdraw, asserting that Daniels' claim was so lacking in merit that he could not ethically advocate it. The Superior Court denied Daniels' third motion for postconviction relief based on Daniels' failure to overcome the Rule 61 procedural bars and granted Postconviction Counsel's motion to withdraw. The court found that Price's affidavit failed to create a strong inference of Daniels' actual innocence because it was contradicted by the testimony of multiple witnesses and physical evidence presented at trial. The court also noted that Price gave conflicting statements to an investigator about Daniels' whereabouts at the time of Griffith's murder. As to the medical records, the court found that these records did not constitute new evidence because

4

they had been provided to Daniels' trial counsel and "would have been insufficient, if introduced at trial, to have probably altered the outcome of the trial."[8] This appeal followed.

(6) In his opening brief, Daniels argues that the Superior Court erred in finding that the medical records did not constitute new evidence creating a strong inference of his actual innocence. Daniels has waived appellate review of claims that he raised below but did not argue on appeal.[9] After the State moved to affirm the Superior Court's judgment, Daniels moved for appointment of counsel and additional briefing or remand of this matter to the Superior Court in light of *Glossip*.

(7) This Court reviews the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[10] We review legal or constitutional questions *de novo*.[11] Before addressing any substantive issues, we consider the procedural requirements of Rule 61 to determine whether any claims are procedurally barred.[12]

(8) As the Superior Court held, Daniels' motion—his third under Rule 61—is procedurally barred as untimely and repetitive unless he can establish that the procedural bars do not apply. Daniels contends that these bars do not apply because

---

[8] *Daniels*, 2024 WL 4867172, at *4.
[9] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993).
[10] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[11] *Id.*
[12] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

he has pleaded new evidence creating a strong inference of his actual innocence. To satisfy Rule 61's actual-innocence exception to the procedural bars, Daniels must "show that his new evidence (1) is such as will probably change the result if a new trial is granted; (2) has been discovered since the trial and could not have been discovered before by the exercise of due diligence; and (3) is not merely cumulative or impeaching."[13] "Innocence of the 'acts underlying the charges' requires 'more than innocence of intent; it requires new evidence that a person other than the petitioner committed the crime.'"[14]

(9) Contrary to Daniels' contentions, the medical records do not constitute new evidence creating a strong inference of his actual innocence. The medical records were created by Bellevue Hospital Center in connection with its treatment of Daniels after he was shot multiple times in a January 2000 incident. These records were not new because they were created in 2000 and were provided to the Office of Defense Services in 2002, before Daniels' trial.

(10) Nor did the records demonstrate, as Daniels now claims, that he was physically incapable in April 2001 of shooting Griffith or of even getting out of the vehicle that Price was driving. During his trial testimony, Daniels referred to a previous shooting that left him with a limp when he walked, unable to completely

---

[13] *Purnell v. State*, 254 A.3d 1053, 1100 (Del. 2021).
[14] *Id.* at 1095 (quoting *State v. Taylor*, 2018 WL 3199537, at *7 (Del. Super. June 28, 2018)).

bend his knee, and needing to sit in the front seat of a vehicle so that he could extend his leg. He did not, however, testify that he needed assistance getting in and out of a vehicle or was unable to fire a gun. In this appeal, Daniels has not identified anything in the medical records to support his claim that the January 2000 shooting left him unable to perform these actions in April 2001. The Superior Court therefore did not err in concluding that Daniels failed to show that the medical records would probably change the result if a new trial were granted.

(11) Turning to Daniels' motion for appointment of counsel and for additional briefing or remand to the Superior Court in light of *Glossip*, the motion must be denied because *Glossip* has no bearing on this case. In *Glossip*, the United States Supreme Court held that documents previously withheld by the prosecution established that the prosecution had violated its constitutional obligation under *Napue v. Illinois*[15] by failing to disclose that the trial testimony of its main witness was false, the prosecution knew the testimony was false, and the prosecution knowingly failed to correct it.[16] Daniels' medical records were not withheld from him by the State and do not suggest that any State witness testified falsely.

---

[15] 360 U.S. 264 (1959).
[16] *Glossip*, 145 S. Ct. at 626-30.

7

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED, Daniels' motion is DENIED, and the Superior Court's judgment is AFFIRMED.

BY THE COURT:

/s/ Abigail M. LeGrow
Justice