IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES WHEELER, | § | |
| | § | |
| Defendant Below, | § | No. 318, 2025 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. K2406000502A |
| | § | |
| Appellee. | § | |

Submitted: March 2, 2026
Decided: April 24, 2026

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

After consideration of the brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26(c), the State's response, the appellant's points, and the Superior Court record, it appears to the Court that:

(1)  This is James Wheeler's direct appeal from his convictions for first-degree rape and other crimes. Wheeler's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that he has made a conscientious review of the record and the law and concluded that the appeal is without merit. Counsel informed Wheeler of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Wheeler of his right to supplement counsel's presentation.

Wheeler provided issues for the Court's consideration. The State argues that the Superior Court's judgment should be affirmed.

(2)    The complaining witness, Cherise,[1] testified at trial that on May 31, 2024, three of her nephews, including Wheeler,[2] visited her apartment. An acquaintance known as "Ms. Piggy" was also present at the beginning of the visit. Ms. Piggy provided Wheeler and Cherise with crack pipes and then left the apartment. After the other nephews left to go to the store, Cherise left Wheeler in the living room and locked herself in the bedroom because she was afraid to be alone with Wheeler. After ingesting some crack cocaine, Cherise heard knocking on the front door of the apartment. When Cherise left the bedroom to investigate, she saw Wheeler standing naked in the living room. He confronted Cherise with a knife and grabbed her. Cherise tried to escape, Wheeler flipped over a coffee table, causing glass to shatter, and ripped off Cherise's clothing. Wheeler touched Cherise's genitals and attempted vaginal penetration with his penis. Cherise lost control of her bowels. When Wheeler realized there were feces on his penis and hand, he ordered Cherise to the bathroom and demanded that she wash and suck his penis. Cherise tried to wipe off the feces with a washcloth and performed fellatio on Wheeler. Wheeler also ordered Cherise to stick her finger into his anus. Cherise complied with

---

[1] We have assigned a pseudonym to the victim under Supreme Court Rule 7(d).
[2] Cherise is Wheeler's great-aunt.

that demand, but feigned compliance when he ordered her to "lick his butt." Wheeler grabbed Cherise, forced her onto her bed, and again attempted vaginal penetration. The attack ended when the other nephews returned from the store.

(3) Cherise bathed and rinsed her mouth with toothpaste. Her granddaughters arrived for a surprise visit. Seeing the apartment in disarray, they helped Cherise tidy up, including by placing in the kitchen trashcan broken glass from the living room and a pair of underwear that Wheeler had left.

(4) With her family members' encouragement, Cherise reported the assault to police the next day. The responding detective observed and photographed feces on the floor and smeared on the bathtub. He collected the broken glass and underwear from the kitchen trashcan; ripped, feces-covered women's underwear from the bedroom; a feces-covered washcloth in the bathroom; and the knife that Cherise reported Wheeler used during the attack. Cherise went to Christiana Hospital for a sexual-assault examination. A forensic nurse examiner documented multiple abrasions and bruising on Cherise's body and swabbed various parts of her body for DNA.

(5) In an interview with the detective, Wheeler admitted that he went to Cherise's apartment and that he used cocaine around the time of the incident. He claimed that Cherise owed him money for drugs. He admitted that Cherise was scared of him, but he asserted that the coffee table was knocked over when Cherise

3

had a knife and was "trying to get behind" him. He admitted that the pair of underwear collected from the trashcan were his and said that he left it in the apartment because it was too small.

(6) DNA testing did not identify the presence of male DNA on the swabs from Cherise's body. The DNA analyst testified that the knife contained a mixed DNA profile consistent with two contributors, including Cherise and Wheeler, with a one-in-55,340 probability of randomly selecting an unrelated individual as a contributor.

(7) The jury found Wheeler guilty of first-degree rape, attempted first-degree rape, possession of a deadly weapon during commission of a felony, aggravated menacing, and terroristic threatening. It acquitted Wheeler of second-degree rape and attempted second-degree rape. During trial, the Superior Court dismissed a kidnapping charge, concluding that the alleged kidnapping was not sufficiently independent from the sexual assault. After the jury's verdict, the State dropped a charge of possession of a deadly weapon by a person prohibited, which had been severed for trial. On June 26, 2025, the Superior Court sentenced Wheeler to a total of forty-seven years of nonsuspended prison time.

(8) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must be satisfied that the appellant's counsel has made

a conscientious examination of the record and the law for arguable claims.[3] The Court must also conduct its own review of the record and determine whether "the appeal is indeed so frivolous that it may be decided without an adversary presentation."[4]

(9) Wheeler argues that his counsel provided ineffective assistance by not filing various motions and by failing to "pursue and subpoena" an unspecified "key witness." This Court has consistently held that it will not consider on direct appeal ineffective assistance of counsel claims that were not first presented to the trial court.[5]

(10) Wheeler contends that he was not permitted to review discovery materials in the case, which impeded his ability to prepare for trial and prevented him from making a rational decision about whether to accept a plea offer. This claim is without merit. The Superior Court docket reflects that the State provided Wheeler's counsel with discovery on six dates between June and December 2024. To the extent Wheeler claims that his counsel was ineffective for not facilitating Wheeler's personal review of the discovery materials, we will not consider that

---

[3] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[4] *Penson*, 488 U.S. at 82.
[5] *Johnson v. State*, 326 A.3d 1170, 2024 WL 4125707, at *3 n.2 (Del. Sept. 10, 2024) (TABLE) (citing *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994)).

claim on direct appeal.[6] Moreover, Wheeler did not assert during his plea-rejection colloquy—or at any other time before or during trial—that he had not been permitted to review discovery. Instead, he affirmed when rejecting the State's plea offer that he had enough time to discuss the offer with counsel, did not want to have any further conversation with counsel about the plea, did not have any questions for the court, and was satisfied that counsel had done everything she could to explain the plea offer to him.[7]

(11) Wheeler also asserts that Cherise's testimony was inconsistent and contradictory. He further contends that her testimony was inadmissible because she was under the influence of drugs at the time of the incident. These arguments also lack merit. Wheeler did not object at trial to the admissibility of Cherise's testimony based on her consumption of drugs. Under Rule 601 of the Delaware Uniform Rules of Evidence, "almost anyone is competent to testify, letting the concerns of mental or moral capacity go to the issues of credibility or weight given to the evidence."[8] Cherise testified that she smoked two hits of crack cocaine before the attack, which was less than her normal consumption, and that she did not feel high—only fearful—

---

[6] *Id.*

[7] Appendix to State's Response, at B33-35. *Cf. Pabst v. State*, 91 A.3d 562, 2014 WL 1570250, at *2 (Del. Apr. 17, 2024) (TABLE) (finding no merit to appellant's argument that his guilty plea was involuntary because he did not receive his own copies of materials that the State produced in discovery).

[8] *Ricketts v. State*, 488 A.2d 856, 857 (Del. 1985).

when she saw Wheeler standing naked in the living room.[9] Wheeler had the opportunity to cross-examine Cherise about her drug use and its effect on her memory and credibility[10] and about any inconsistencies in her testimony at trial or between her testimony and her statement to police. "It 'was within the province of the jury to assess the witnesses' credibility and to determine whether any inconsistencies created a reasonable doubt as to [Wheeler's] guilt.'"[11] The jury evaluated the evidence and found Wheeler guilty of multiple crimes, while acquitting him of others. We find no indication that the jury failed to resolve any inconsistencies in the trial testimony before rending its verdict.[12]

(12)   Finally, Wheeler argues that the prosecutor misrepresented the DNA evidence. During the State's closing argument, the prosecutor stated that Wheeler's "DNA was . . . on the knife."[13] Defense counsel objected and, at sidebar, argued that the prosecutor was misrepresenting the evidence because the DNA analyst had testified that the DNA from the knife was "consistent" with Wheeler's DNA and described the probability that Wheeler was a "contributor" to the DNA collected

---

[9] Appendix to Opening Brief, at A80-81, A112-13.

[10] Defense counsel did not ask Cherise any questions about her drug use but did note it during closing argument. *Id.* at A284.

[11] *Prince v. State*, 214 A.3d 441, 2019 WL 3383880, at *11 (Del. July 25, 2019) (TABLE) (quoting *Crump v. State*, 204 A.3d 114, 2019 WL 494933, at *4 (Del. Feb. 7, 2019) (TABLE)).

[12] *See Lobianco v. State*, 894 A.2d 407, 2006 WL 520015, at *2 (Del. Mar. 3, 2006) (TABLE) (finding no merit to appellant's arguments questioning victim's and police officer's credibility and the consistency of their respective testimony).

[13] Appendix to Opening Brief at A271.

from the knife.[14] The prosecutor responded that "whether the [DNA analyst's] report says the DNA is consistent with this person's profile or the report says they can be considered as a contributor, [the DNA analyst] testified that all of those are based off probability. . . . I'm not misrepresenting the facts or the testimony. [Wheeler] is considered a contributor. Therefore, his DNA is present on the knife."[15] The court overruled Wheeler's objection, reasoning that the prosecutor was arguing a fair inference from the evidence and that the defense could argue that the jury should draw a different conclusion.[16]

(13)   During the defense's closing argument, counsel emphasized the DNA analyst's testimony that the probability of matching DNA loci is higher among blood relatives than nonrelatives and that the DNA on the knife therefore could be that of another family member, several of whom had visited Cherise's apartment and one of whom—Wheeler's brother—had been living there.[17] Defense counsel also argued that either Wheeler or another relative could have touched the knife in the normal course of visiting the apartment.

(14)   In rebuttal, the prosecutor stated that "whether the report says someone is a contributor to a mixture or whether it says this is consistent with [the] DNA

---

[14] *Id.* at A271-73.
[15] *Id.* at A272-73.
[16] *Id.* at A273-74.
[17] *Id.* at A285-89.

profile of 'X' person, it's all based on a probability. . . . The DNA on the knife is not a possibility here, as stated by Defense. It is scientifically proven through DNA testing that [Cherise] and the defendant were contributors to the DNA located on the knife."[18]

(15) During a closing statement, "a prosecutor may argue legitimate inferences of the appellant's guilt that flow from the evidence."[19] If the defense objected at trial to a statement that the prosecutor made during closing argument, we review *de novo* to determine whether the statement was improper or prejudicial.[20] If the remark was improper, we determine the prejudicial effect by assessing (i) the closeness of the case, (ii) the centrality of the issue affected by the alleged error, and (iii) the steps taken to mitigate any effects of the alleged error.[21]

(16) We have carefully reviewed the prosecutor's argument as to the DNA and find no misconduct. The DNA analyst testified:

> The conclusion was that the evidentiary sample [from the knife] produced a mixed DNA profile consistent with two individuals at least one of which was male. Both [Cherise] and Mr. James Wheeler can be included as potential DNA contributors to this mixture.
> . . . .
> That statistic [stated in a table in the analyst's report] is essentially saying the probability of randomly selecting an individual

---

[18] *Id.* at A297-99.

[19] *Daniels v. State*, 859 A.2d 1008, 1011 (Del. 2004) (internal quotation omitted).

[20] *Id.*

[21] *Id.*

off the street that is not a relative of either of the individuals that could be included as a potential contributor to this mixture was 1 in 55, 340.[22]

The analyst further testified that DNA loci are "specific targets within the DNA profile where we can make differentiations between what DNA can be identified and where we can make differentiations between individuals," and that as to the DNA from the knife, seven or eight DNA loci were determined conclusive, which resulted in the probability calculation described above.[23] He also testified that he "can't say that the DNA matches the individuals" because the DNA from the knife was a mixed profile from which he could not separate one contributor.[24] Rather than "say[ing] specifically whether it matches one person or another," he had "to look at the probability, which is what [he] did with the 1 in 55,000, to help determine how strong it is that these [are the] contributors as opposed to someone else."[25]

(17)    Viewing the prosecutor's statement in the context of all the evidence, we agree with the trial court's determination that the prosecutor argued an inference that could be drawn from the evidence. The jury was presented with the DNA analyst's testimony that Wheeler was a "contributor" to the mixed-profile DNA found on the knife and that there was a one-in-55,340 probability of randomly

---

[22] Appendix to State's Response, at B49.

[23] *State v. Wheeler*, Crim. I.D. No. 2406000502A, Transcript of Trial Feb. 5, 2025, at 145-46 (Del. Super. Ct.).

[24] *Id.* at 152-53.

[25] *Id.* at 154.

10

selecting an unrelated individual as a contributor. The jury also heard the analyst's testimony that the DNA of related individuals is more similar than that of unrelated individuals and that he could not say the DNA from the knife "matched" Wheeler's DNA. The prosecutor's argument that Wheeler's DNA was "on the knife" could fairly be drawn from that evidence. Moreover, in overruling Wheeler's objection, the trial court correctly observed that the defense could argue that the jury should draw a different inference. Indeed, defense counsel did so, arguing that the analyst's probability calculations were for unrelated individuals, relatives' DNA is more similar, and the DNA on the knife could have been from any of several relatives who had lived in or visited the apartment.

(18) We have carefully reviewed the record and conclude that Wheeler's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Wheeler's counsel has made a conscientious effort to examine the record and has properly determined that Wheeler could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice